**Marie S. REYNOLDS, Individually and as Executrix of the Estate of Lester J. Reynolds, Plaintiff,**

v.

**MERCY HOSPITAL, Millard Fillmore Hospital, Ronald Basalyga, M.D., Medical Associates of Hamburg, P.C., Ross Guarino, M.D., Janerio Aldridge, M.D., and Cardio–Thoracic Associates of Western New York, P.C., Defendants.**

**No. 91–CV–123A.**

United States District Court, W.D. New York.

Aug. 24, 1994.

216

Hamsher & Valentine (Richard P. Valentine, of counsel), Buffalo, NY, for plaintiff.

Maloney, Gallup, Roach, Brown & McCarthy, P.C. (Joseph V. McCarthy, of counsel), Buffalo, NY, for Mercy Hosp.

Damon & Morey (Barbara L. Schifeling, of counsel), Buffalo, NY, for Millard Fillmore Hosp.

Brown & Tarantino (Kathleen M. Sweet, of counsel), Buffalo, NY, for Ronald Basalyga, M.D. and Medical Associates of Hamburg, P.C.

Connors & Vilardo (Lawrence J. Vilardo, Kevin A. Ricotta, of counsel), Buffalo, NY, for Ross Guarino, M.D., Janerio Aldridge, M.D., and Cardio–Thoracic Associates of Western N.Y., P.C.

## ORDER

ARCARA, District Judge.

The above-referenced case was referred to Magistrate Judge Leslie G. Foschio, pursuant to 28 U.S.C. § 636(b)(1)(B) on March 21, 1991. On July 29, 1994, Magistrate Judge Foschio filed a Report and Recommendation recommending that defendants' motions for dismissal/summary judgment be granted, that the Court decline to exercise supplemental jurisdiction over the asserted pendent state claims against defendants, and that plaintiff's state claims against all defendants be dismissed.

The Court having carefully reviewed the Report and Recommendation, as well as the pleadings and materials submitted by the

parties; and no objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation, defendants' motions for dismissal/summary judgment are granted. Further, the Court declines to exercise supplemental jurisdiction over the asserted pendent state claims against defendants. Accordingly, the Court dismisses plaintiff's state claims against all defendants and dismisses the case in its entirety.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

This matter was referred to the undersigned by the Hon. Richard J. Arcara on March 21, 1991 for report and recommendation on any dispositive motions. The matter is presently before the court on Defendants' motions to dismiss the complaint.

### *BACKGROUND*

Plaintiff, Marie S. Reynolds, individually and as the Executrix of the Estate of Lester J. Reynolds, filed this action on February 28, 1991. Plaintiff alleged a cause of action under 42 U.S.C. § 1395dd, claiming that Defendants negligently failed to provide an appropriate medical screening examination, failed to determine whether or not an emergency medical condition existed for Mr. Reynolds, failed to supply stabilizing treatment to Mr. Reynolds, and failed to provide for transfer of Mr. Reynolds to another medical facility. Plaintiff also asserted claims for loss of consortium against all Defendants. In addition, Plaintiff raised individual negligence claims against each of the Defendants.

Defendants filed their answers, with Defendants Mercy Hospital and Millard Fillmore Hospital raising cross-claims against the other Defendants for indemnification and contribution.

On February 23, 1993, Defendant Mercy Hospital filed a motion to dismiss the complaint for failure to state a claim under 42 U.S.C. § 1395dd. Mercy Hospital claims that, in the absence of a viable claim under 42 U.S.C. § 1395dd, there is no subject matter jurisdiction as there is no federal question at issue, and there is no diversity between the parties. On May 28, 1993, Defendants Guarino, Aldridge, and Cardio–Thoracic Associates of Western New York, P.C. ("CTA") also moved to dismiss the complaint on the same grounds. Defendant Millard Fillmore Hospital filed a similar motion to dismiss the complaint on June 28, 1993. On September 7, 1993, Defendants Basalyga and Medical Associates of Hamburg, P.C. ("Medical Associates") filed a dismissal motion, also arguing the same ground to dismiss, *i.e.,* lack of subject matter jurisdiction.

On May 28, 1993, Plaintiff filed an affidavit in opposition to Mercy Hospital's motion to dismiss the complaint.

Oral argument on the motions was held on September 15, 1993.

For the reasons as set forth below, Defendant Mercy Hospital's motion to dismiss/motion for summary judgment should be GRANTED; Defendant Millard Fillmore Hospital's motion to dismiss/motion for summary judgment should be GRANTED; Defendants Guarino, Aldridge, and CTA's motion to dismiss/motion for summary judgment should be GRANTED; and, Defendant Basalyga and Medical Associates' motion to dismiss/motion for summary judgment should be GRANTED.

### *FACTS*

Dr. Ronald Basalyga of the Medical Associates of Hamburg, P.C. arranged for the admission of Lester J. Reynolds into Mercy Hospital during the first week in March, 1989 for the purpose of performing a preliminary upper endoscopy and a pneumatic dilatation. *See* Exhibit F, Defendant Mercy Hospital's Motion to Dismiss, Deposition of Dr. Basalyga, at p. 57. On March 3, 1989, Lester J. Reynolds was admitted into a hospital room at Mercy Hospital for the scheduled procedure. *See* Exhibit E, Defendant Mercy Hos-

pital's Motion to Dismiss, Nurses Notes, dated March 3, 1989.

At approximately 2:00 p.m., following the procedure, Reynolds complained of mild pressure below the rib cage. *See* Exhibit F, Mercy Hospital's Motion to Dismiss, Deposition of Dr. Basalyga, at p. 100. Tests showed that Reynolds had an esophageal perforation. *See* Exhibit F, Mercy Hospital's Motion to Dismiss, Deposition of Dr. Basalyga, at pp. 101–105, 107. Defendant Ross Guarino, M.D. of the CTA was called for a surgical consultation, *see* Exhibit F, Mercy Hospital's Motion to Dismiss, Deposition of Dr. Basalyga, at pp. 113–114, and a decision was made by Dr. Guarino to transfer Reynolds to Millard Fillmore Hospital for surgery. *See* Exhibit F, Mercy Hospital's Motion to Dismiss, Deposition of Dr. Basalyga, at pp. 121, 123. According to Dr. Guarino, the transfer to Millard Fillmore was made because of his belief that the post-operative care at Millard Fillmore would be more appropriate for Reynolds given the existence of a surgical house staff and the fact that a member of the CTA is almost always in the intensive care unit at Millard Fillmore. *See* Exhibit G, Mercy Hospital's Motion to Dismiss, Deposition of Dr. Guarino, at pp. 53, 57. Dr. Guarino did not consult with the administration of Mercy Hospital prior to the transfer. *See* Exhibit G, Mercy Hospital's Motion to Dismiss, Deposition of Dr. Guarino, at p. 97.

The transfer of Reynolds from Mercy Hospital to Millard Fillmore Hospital was completed at approximately 7:30 p.m. that same evening with surgery scheduled for later that evening. *See* Exhibit E, Mercy Hospital's Motion to Dismiss, Discharge Summary by Dr. Basalyga. Upon his arrival at Millard Fillmore, Reynolds was examined by Dr. Aldridge, and Dr. Aldridge later performed surgery to repair the esophageal perforation, a condition he characterized as "urgent," but not an "emergency." *See* Millard Fillmore's Motion to Dismiss, Exhibit F, Deposition of Dr. Aldridge, at pp. 65–66 and Exhibit J, Deposition of Dr. Aldridge, at p. 62–63, 73, 130.

Reynolds subsequently died on May 20, 1989. It is not disputed that Reynolds had health insurance coverage during his hospital stays at both Mercy and Millard Fillmore.

## DISCUSSION

### 1. *Procedure: Motions to Dismiss/Motions for Summary Judgment*

As a preliminary matter, the court notes that, although each Defendant filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b), they have all filed supporting affidavits and documents with their motions. Such documents may not be considered on a motion to dismiss, but may only be considered on a motion for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff objected to considering these motions to be summary judgment motions on the ground that, at the time of the filing of Plaintiff's affidavit in opposition, discovery had not yet been completed because of a dispute which arose during a depositions of Drs. Guarino and Aldridge. Subsequently, on December 3, 1993, this court received notice from Plaintiff's counsel that the deposition dispute had been resolved. As of the date of this Report and Recommendation, however, Plaintiff has not submitted any further papers in opposition to Defendants' motions.

As a general rule, in deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court may not consider extraneous documents or affidavits not attached to or incorporated by reference in the complaint. *See Cortec Industries, Inc. v. Sum Holding, L.P.,* 949 F.2d 42, 47–48 (2d Cir.1991). In other words, a court may not consider matters submitted outside the pleading at issue unless notice is given to all parties that the motion is being converted to a motion for summary judgment and the parties are afforded a reasonable opportunity to present additional pertinent material. *Krijn v. Pogue Simone Real Estate Co.,* 896 F.2d 687, 689 (2d Cir.1990). In determining the adequacy of the notice of the conversion of a motion to dismiss into a motion for summary judgment, "the essential inquiry is whether the [opposing party] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and de-

prived of a reasonable opportunity to meet facts outside the pleadings." *Kennedy v. Empire Blue Cross & Blue Shield,* 989 F.2d 588, 592 (2d Cir.1993) (quoting *In re G. & A. Books,* 770 F.2d 288, 295 (2d Cir.1985), *cert. denied,* 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986)). However, "even where only the party moving to dismiss has submitted extrinsic material such as depositions or affidavits, the opposing party may be deemed to have had adequate notice that the motion to dismiss would be converted." *National Association of Pharmaceutical Manufacturers, Inc. v. Ayerst Laboratories, Division of/and American Home Products Corp.,* 850 F.2d 904, 911 (2d Cir.1988).

■ In this case, Defendants all filed their motions to dismiss on or prior to September 7, 1993. Attached to each motion were copies of transcripts from depositions and relevant documents. Plaintiff noted as much when, in the response to Mercy Hospital's motion, an objection was made to considering the motions as summary judgment motions on the ground that the depositions of Dr. Guarino and Dr. Aldridge had not been completed because of a dispute. As noted above, however, the dispute was resolved as of December 3, 1993, with no further submission from Plaintiff.

The court concludes that Plaintiff had ample and reasonable notice that Defendants' motions, which although designated as motions under Fed.R.Civ.P. 12(b) motions, were actually summary judgment motions, and that the court might treat the motions accordingly. As of the date of this Report and Recommendation, Plaintiff has not chosen to submit any supplementary material, or to respond to the motions with factual material obtained from the discovery that has taken place in this case. The court finds that Plaintiff had adequate notice that Defendants' motions would be converted to summary judgment motions, but chose not to make any further submissions. Accordingly, Defendants' motions will be considered to be motions under Fed.R.Civ.P. 56(b).

**2. Merits: Motions for Summary Judgment**

Summary judgment will be granted pursuant to Fed.R.Civ.P. 56 when the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 2556–57, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). The party moving for summary judgment bears the burden of establishing the nonexistence of a genuine issue of material fact. If there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain a summary judgment. *Celotex, supra,* 477 U.S. at 331, 106 S.Ct. at 2556–57.

■ The function of a district court in considering a summary judgment motion is not to resolve disputed issues of fact, but to determine whether there is a genuine issue to be tried. *Rattner, supra,* at 209. In assessing the record, including any affidavits, exhibits, and other submissions, the court is required to resolve all ambiguities and to draw all factual inferences in favor of the nonmoving party. *Anderson, supra,* 477 U.S. at 255, 106 S.Ct. at 2513–14; *Rattner, supra,* at 209.

**(a) 42 U.S.C. § 1395dd Claim**

■ Plaintiff's federal cause of action states a claim against all Defendants under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. Congress enacted EMTALA in 1986 "in response to a growing concern that hospitals were 'dumping' patients unable to pay, by either refusing to provide emergency medical treatment or transferring patients before their emergency conditions were stabilized." *Brooks v. Maryland General Hospital, Inc.,* 996 F.2d 708, 710 (4th Cir.1992). EMTALA was not designed as a federal medical malpractice statute, *see Baber v. Hospital Corp. of America,* 977 F.2d 872, 880 (4th Cir.1992), rather, it was enacted because of Congress' concern that "hospitals were abandoning the longstanding practice of providing emergency care to all due to increas-

ing pressures to lower costs and maximize efficiency," and because traditional state tort law did not require hospitals to provide such care. *Brooks, supra,* at 710.

■ Under EMTALA, every hospital that has both a Medicare provider agreement with the Secretary of Health and Human Services, and an emergency room or department has a duty to (1) provide to anyone presented for treatment "an appropriate medical screening ... to determine whether or not an emergency medical condition ... exists," (2) to stabilize the condition or, if medically warranted, to transfer the person to another facility if the benefits of transfer outweigh the risks, and (3) to restrict the transfer of a person until that person's condition is stabilized. 42 U.S.C. § 1395dd(a)–(c). *See also Ballachino v. Anders,* 811 F.Supp. 121, 123 (W.D.N.Y.1993). "An 'appropriate' screening procedure is properly determined not by reference to particular outcomes, but instead by reference to a hospital's standard screening procedures." *Brooks, supra,* at 711 (citing *Cleland v. Bronson Health Care Group, Inc.,* 917 F.2d 266, 272 (6th Cir. 1990)).

Defendants Mercy Hospital and Millard Fillmore Hospital (the "Hospital Defendants"), both Medicare providers with emergency departments, argue that Plaintiff has not set forth a valid cause of action under 42 U.S.C. § 1395dd as Plaintiff never presented at the emergency rooms of either hospital. Further, the Hospital Defendants contend that 42 U.S.C. § 1395dd(b) was not violated as an emergency medical condition did not exist at the time of Reynolds treatment and transfer. The Hospital Defendants also claim that, as Reynolds has not alleged that he was indigent, there is no cause of action under § 1395dd. Finally, Millard Fillmore Hospital argues that, as the transferee facility, it is not liable under § 1395dd. The Hospital Defendants move that the complaint be dismissed against them on the ground that the court does not have subject matter jurisdiction over the matter as there is no federal question or diversity jurisdiction.

Defendants Basalyga, Medical Associates of Hamburg, P.C., Guarino, Aldridge, and Cardio–Thoracic Associates of Western New York argue that the complaint should be dismissed against them as there is no private cause of action against treating physicians under 42 U.S.C. § 1395dd. As such, these Defendants contend that no subject matter jurisdiction exists as there is no diversity between the parties, and the only remaining claims are based on state tort law.

Plaintiff alleges that, at the time of Reynolds' presentment to Mercy Hospital, Reynolds was suffering from an emergency medical condition. Plaintiff claims that the complaint sets forth the critical factual allegations to establish the necessary elements of a violation of § 1395dd.[1]

As to the individual treating physicians and their professional corporations, most courts have found that 42 U.S.C. § 1395dd creates no private cause of action against a private physician and a medical professional corporation. *See, e.g., King v. Ahrens,* 16 F.3d 265, 271 (8th Cir.1994); *Delaney v. Cade,* 986 F.2d 387, 393–94 (10th Cir.1993); *Baber, supra,* at 876–78; *Gatewood v. Washington Healthcare Corp.,* 933 F.2d 1037, 1040 n. 1 (D.C.Cir.1991); *Ballachino, supra,* at 123; *Verhagen v. Olarte,* 1989 WL 146265 at *6 (S.D.N.Y.1989). *Cf., Palmer v. Hospital Authority of Randolph County,* 22 F.3d 1559 (11th Cir.1994) (court held that, while it was settled in other circuits that § 1395dd created no private cause of action against private physicians, the Eleventh Circuit had not yet decided the applicability of the statute to treating physicians at the time of the filing of that lawsuit). The two district courts within the Second Circuit to address the question of the applicability of § 1395dd to private physicians have determined that Congress did not authorize such actions against physicians. *Ballachino, supra,* at 123 (holding that it was "persuasive ... that the Act's enforcement provision, codified at § 1395dd(d)(2)(A), is explicitly limited to actions against the participating hospital so that there is no private right of action against individual physicians under EMTALA"); *Verhagen, supra* at *6

---

1. The court notes that, despite the completion of depositions of the parties, and the exchange of

documents and interrogatories, Plaintiff has not submitted any supporting factual information.

(construing the statutory scheme to exclude a federal private claim against a physician under EMTALA). This court also concludes that, based on the prevailing caselaw, no cause of action against private physicians or their medical professional corporations may be brought under § 1395dd. Accordingly, Defendants Basalyga, Medical Associates of Hamburg, P.C., Guarino, Aldridge, and Cardio–Thoracic Associates of Western New York's motions for summary judgment on the federal claim under 42 U.S.C. § 1395dd should be GRANTED.

■ It is equally clear that a valid claim under 42 U.S.C. § 1395dd may be brought against the Hospital Defendants as they are Medicare providers with emergency medicine departments. However, these Defendants argue that Plaintiff has failed to state a claim against them under § 1395dd.

■ First, the Hospital Defendants argue that Reynolds did not present himself to the emergency room at either Mercy Hospital or Millard Fillmore Hospital, and that, as this is a necessary element of a claim under § 1395dd, Plaintiff fails to state a claim under the statute. The courts are divided on this issue. In *Deberry v. Sherman Hospital Assoc.*, 741 F.Supp. 1302, 1305 (N.D.Ill.1990), the court charged the jury on the elements of an action under § 1395dd, stating that a plaintiff must allege that (1) he went to the defendant's emergency room, (2) with an emergency condition, (3) and the hospital either: (a) did not adequately screen the plaintiff to determine whether an emergency condition existed, or (b) discharged or transferred the patient before the emergency condition had been stabilized. *Deberry, supra,* at 1305. *See also Stevison v. Enid Health Systems,* 920 F.2d 710 (10th Cir.1990) (stating that essential element of a claim under § 1395dd is presentment to the emergency room); *Power v. Arlington Hospital,* 800 F.Supp. 1384, 1387 (E.D.Va.1992) (EMTALA provisions obligate hospitals receiving Medicare funds to follow certain procedures when patients present themselves to an emergency room). However, in *McIntyre v. Schick,* 795 F.Supp. 777 (E.D.Va.1992), the court held that a plaintiff was not required to present to the hospital's emergency department in or-

der to state a claim under § 1395dd. Rather, the court found that, while under § 1395dd(a), a plaintiff must present to an emergency room in order to state a valid claim, under §§ 1395dd(b) and (c), no such presentment was required as these sections were independent from § 1395dd(a). *McIntyre, supra,* at 780. *See also Helton v. Phelps County Regional Medical Center,* 794 F.Supp. 332, 333 (E.D.Mo.1992) (federal Anti–Dumping Act (42 U.S.C. § 1395dd) could apply to discharge of hospital patient who was not admitted to hospital's emergency room) (citing *Smith v. Richmond Memorial Hospital,* 243 Va. 445, 416 S.E.2d 689 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 442, 121 L.Ed.2d 361 (1992) ("dumping a patient ... is neither related to, nor dependent upon, the patient arriving through the emergency room"). Neither the Second Circuit, nor any federal district courts within the Circuit, have addressed this issue.

■ In interpreting a statute, courts must consider the ordinary meaning of each word in the legislation so as to give effect to each term and the legislation as a whole. *See Connecticut National Bank v. Germain,* —— U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) ("we have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there"); *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989) (the "plain meaning of legislation should be conclusive, except in the rare cases in which literal application of the statute will produce results demonstrably at odds with the intention of its drafters") (citing *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). Section 1395dd(a) directs that, where a person presenting at a hospital emergency room requests examination or treatment, the hospital must provide an appropriate screening to determine whether an emergency medical condition exists. Section 1395dd(b) directs that where "any individual comes to a hospital and the hospital determines that the individual has an emergency medical condition [as defined], the hospital must provide ..." further treat-

ment within its capabilities to stabilize the medical condition or transfer the patient to another facility, in accordance with § 1395dd(c).

The plain meaning of subsection (a) requires a medical "screening" for patients who present at a hospital emergency room, and treatment for the purpose of stabilizing the condition of the patient. Subsection (b) directs treatment for the purposes of stabilizing the patient whose condition has been determined by the hospital to be within the statutory definition of an emergency medical condition. While the sequence of the subsections logically tracks what one would expect to be the usual course of events following the initial entry by a patient through an emergency room, the absence of any reference to an emergency room in subsection (b) necessarily underscores the generality of the term "hospital" as used. It is common knowledge that most patients admitted for treatment in a hospital are admitted by their attending physicians, who are on staff at the hospital and authorized by the hospitals to practice medicine on its premises. Some patients may, of course, also be admitted for further treatment after initial screening and treatment in its emergency room. In either case, it is clear that, at that point, the treatment, stabilization, and transfer requirements of subsection (b) attach. Whether a patient can show that liability for any failure to comply with the statute can be attributed to the hospital by virtue of the conduct of hospital or emergency room personnel, or staff physicians is a different issue. *See, e.g., Smith v. Richmond Memorial Hospital, supra,* 416 S.E.2d at 690 (order to transfer plaintiff admitted to hospital by physician "called by hospital" stated claim under federal Anti–Dumping Act regardless of fact that plaintiff had not been admitted through emergency room). To interpret subsection (b) to refer exclusively to admissions via an emergency room would render the phrase "[i]f an individual comes to a hospital" surplusage, in violation of prevailing standards of statutory construction. The legislative history on this point is subject to either interpretation. *See* H.R. No. 241, 99th Cong., 1st Sess., pt. 1, at 27 (1986), *reprinted in* 1986 U.S.C.C.A.N. 42, 605; H.R. No. 241, 99th Cong., 1st Sess., pt.

3, at 6 (1986), *reprinted in* 1986 U.S.C.C.A.N. 42, 727–728.

■ So understood, the statute "may go further than what Congress contemplated, but that is not a reason to distort or excise the words that Congress wrote." *Cleland v. Brown Health Care Group, Inc.,* 917 F.2d 266, 270 (6th Cir.1990). Accordingly, the undisputed fact that Reynolds was directly admitted to Mercy Hospital by his private physician for a pre-arranged surgical procedure and not through the hospital's emergency room does not require dismissal of his § 1395dd claim.

■ However, although court finds that presentment through an emergency room was not a necessary element, Reynolds was not admitted to the hospital in an emergency medical condition, another element of a cause of action under the statute. Under 42 U.S.C. § 1395dd(e)(1)(A), an "emergency medical condition" is defined as a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in (i) placing the health of the individual in serious jeopardy, (ii) serious impairment of bodily functions, or (iii) serious dysfunction of any bodily organ or part.

As stated above, it is undisputed that Reynolds was admitted to hospital pursuant to pre-scheduled arrangements by his private treating physician for the purpose of performing an esophogeal dilatation. It is was only subsequent to the completion of the procedure, that Reynolds developed complications resulting in his transfer to Millard Fillmore Hospital for further treatment. Accordingly, Plaintiff has also failed to establish this necessary element of a cause of action under § 1395dd.

Once Reynolds' complications from surgery developed, he was examined by Dr. Guarino, and a decision was made to transfer Reynolds from Mercy Hospital to Millard Fillmore Hospital based on his physician's belief that he would receive superior post-operative care at Millard Fillmore. The transfer was made at approximately 7:30 p.m. on March 3, 1989, the same day as

surgery. The discharge summary completed at Mercy Hospital details Reynolds' condition following the surgical procedure, and notes the transfer to Millard Fillmore, without mention of any emergency medical condition. Reynolds' treating physician, Dr. Basalyga, stated that Reynolds was stable throughout his stay at Mercy Hospital, and that no emergency medical condition was present at the time of his transfer to Millard Fillmore. Finally, Dr. Aldridge, the surgeon who operated on Reynolds at Millard Fillmore, while classifying Reynolds' condition as needing "urgent" attention, meaning that surgery was to be performed "as soon as possible," stated that the condition was not an emergency or "life-threatening." Exhibit J, Millard Fillmore Hospital's Motion to Dismiss, Deposition of Dr. Aldridge, at pp. 63, 73. Plaintiff did not submit any evidence to the contrary.

In *Green v. Touro Infirmary*, 992 F.2d 537 (5th Cir.1993), the court granted summary judgment to the defendant where the treating physicians stated that the patient was "ambulatory" with "no acute distress" and "stable vital signs" prior to her discharge. *Green, supra*, at 539. The court, finding that the only evidence in the record led to the "inescapable inference" that the hospital staff had stabilized the patient's condition prior to discharge, stated that EMTALA requires only that a hospital stabilize an individual's emergency medical condition—it does not require a hospital to cure the condition. *Green, supra*, at 539. Where the patient's condition was stabilized, the hospital's responsibility had ended. *Green, supra*, at 539 (citing *Brooker v. Desert Hosp. Corp.*, 947 F.2d 412, 415 (9th Cir.1991)).

In this case, even if the other elements of a cause of action under § 1395dd had been met, Plaintiff has failed to present any evidence that Reynolds' "emergency medical condition" was not stabilized at the time of his transfer to Millard Fillmore Hospital. As such, Plaintiff has failed to set forth a claim

under § 1395dd. *See Green, supra*, at 539 (where plaintiff failed present evidence to contradict defendant's evidence of patient's treatment and discharge, summary judgment was appropriate).

■ Finally, Plaintiff has submitted no support for the contention that Millard Fillmore Hospital, the transferee hospital, violated § 1395dd. The evidence presented establishes that Reynolds, upon his transfer to Millard Fillmore, was admitted directly into Intensive Care in preparation for surgery by Dr. Aldridge. The surgery was performed early in the morning hours of March 4, 1989. At no time was Reynolds presented to the emergency room of Millard Fillmore. In *Baber v. Hospital Corp. of America*, the court held that the appropriate medical screening requirement did not apply to the transferee hospital, where the transfer of the patient was made directly to a unit within the hospital by her physicians. *Baber, supra*, at 884.

■ In this case, it is undisputed that Millard Fillmore Hospital accepted the transfer of Reynolds from Mercy Hospital into Millard Fillmore's Intensive Care unit. Reynolds was subsequently cared for at Millard Fillmore Hospital, and an attending physician at Millard Fillmore, Dr. Aldridge, performed the necessary surgery. As such, Plaintiff has failed to state a claim against Millard Fillmore Hospital under § 1395dd.[2]

Based on the above discussion, I find that Plaintiff has failed to establish the essential elements for a cause of action under 42 U.S.C. § 1395dd against any of the Defendants in this action.

### 2. Pendent State Claims

■ Defendants also have moved for summary judgment on the basis that no subject matter jurisdiction exists over the pendent state claims as there is no diversity jurisdiction between the parties. As I have

---

**2.** The court notes that both Mercy Hospital and Millard Fillmore Hospital have argued that a necessary element of 42 U.S.C. § 1395dd is that the patient be indigent or have no health insurance. While Congress' purpose in enacting EMTALA was to protect such patients, *see Deberry v. Sherman Hospital Assoc.*, 775 F.Supp. 1159,

1162 (N.D.Ill.1991) (purpose of § 1395dd is "to combat the increasing problem of emergency rooms refusing to treat indigent patients"), it is not necessary to allege the indigence of the patient in order to state a valid claim under § 1395dd. *See Ballachino v. Anders, supra*, at 123.

recommended that the federal claim against Defendants be dismissed, only the state claims remain.

■ Under 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court shall also have supplemental jurisdiction over all other claims that are so related to claims in the action within the original jurisdiction of the court, that they form part of the same case or controversy under the Constitution. The district court must exercise supplemental jurisdiction if the requirements of § 1367(a) are met, unless one of the exceptions set forth in § 1367(c) exist. *Wilson v. Roberson*, 1993 WL 119695 at * 2 (S.D.N.Y. 1993). Under § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it had original jurisdiction. The Second Circuit has held that "absent exceptional circumstances," where federal claims are disposed of on summary judgment grounds, courts should "abstain from exercising pendent jurisdiction." *Drexel Burnham Lambert v. Saxony Heights Realty*, 777 F.Supp. 228, 240 (S.D.N.Y.1991) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir.), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986)). "Factors to be considered by the court include (1) the length of time the matter has been pending before the federal court; (2) the proximity of the trial date; and (3) the predominance of issues of federal, as opposed to local, concern." *Drexel Burnham Lambert, supra*, at 240. "In the usual case in which all federal law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state law claims." *Morse v. University of Vermont*, 973 F.2d 122, 127–128 (2d Cir.1992).

In this case, the pendent state claims arose from the same set of facts as did the original federal claim. Accordingly, they were properly joined pursuant to 28 U.S.C. § 1367(a). However, once those claims were recommended to be dismissed, under § 1367(c)(3), the remaining state claims become subject to dismissal as the court may, in its discretion, decline supplemental jurisdiction over these claims. While the complaint in this case was filed in 1991, a trial date has not yet been set, and the remaining issues are solely based on state malpractice law. Accordingly, based on relevant Second Circuit law, the court should decline to exercise subject matter jurisdiction over the state claims.

In *Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559 (11th Cir.1994), the court, while retaining claims under 42 U.S.C. § 1395dd against a hospital, but dismissing those same claims against the treating physician and his medical professional corporation, held that the district court retained the power to hear the state-law claims against the physician since each state-law claim and each party was linked to the surviving federal claim against the hospital. The appeals court remanded the action to the district court for that court to determine whether, in its discretion, it would exercise supplemental jurisdiction over the state claims against the physician, despite the lack of a federal claim against the physician. However, that case differs from the instant case as, in *Palmer*, a viable claim under 42 U.S.C. § 1395dd remained against the hospital, while, in the instant case, the federal claims should be dismissed against all parties.

■ Based on the above discussion, I recommend that the pendent state claims should be dismissed, without prejudice to refiling such claims in state court, on the ground that this court lacks subject matter jurisdiction over these state claims. Under Section 205(a) of the New York Civil Practice Laws and Rules ("CPLR"), if an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a dismissal for failure to prosecute, or a final judgment on the merits, a plaintiff may commence a new action based upon the same transaction or occurrence within six months after the termination of the original action, provided that the new action would have been timely commenced at the time of filing of the prior action. Section 205(a) is made applicable to the federal court by 28 U.S.C. § 1367(d) which provides that the period of limitations for any claims asserted as pendent claims in federal court shall be tolled for

a period of thirty days after they are dismissed unless state law provides for a longer tolling period. N.Y. CPLR § 205(a) applies when a pendent claim is dismissed from federal court for lack of subject matter jurisdiction. *See Diffley v. Allied–Signal, Inc.,* 921 F.2d 421 (2d Cir.1990) (dismissal of an action for lack of subject matter jurisdiction may be one of the bases for invoking CPLR § 205(a)); *Dyer v. Cahan,* 150 A.D.2d 172, 540 N.Y.S.2d 785 (1989) (state claim held timely when brought within six months of dismissal, without prejudice, of same action by federal court); *Denehy v. St. John's Queens Hospital,* 114 A.D.2d 991, 495 N.Y.S.2d 431 (1985) (dismissal of state claim by federal court for lack of subject matter jurisdiction did not require that state court dismiss the action on ground of *res judicata* or because applicable statute of limitations had run where suit was reinstated within six months of federal court dismissal).

Therefore, given the applicability of N.Y. CPLR § 205(a), Plaintiffs will not be prejudiced by the dismissal of the pendent state claims in this matter.

### CONCLUSION

Based on the foregoing discussion, Defendant Mercy Hospital's motion for dismissal/summary judgment should be GRANTED; Defendant Millard Fillmore Hospital's motion for dismissal/summary judgment should be GRANTED; Defendants Basalyga and Medical Associates of Hamburg, P.C.'s motion for dismissal/summary judgment should be GRANTED; and Defendants Guarino, Aldridge, and Cardio–Thoracic Associates of Western New York's motion for dismissal/summary judgment should be GRANTED.

Further, pursuant to 28 U.S.C. § 1367(c)(3), the court should decline to exercise supplemental jurisdiction over the asserted pendent state claims against Defendants, and Plaintiff's state claims against all Defendants should also be dismissed.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

\* Editor's note: This opinion was originally published at 853 F.Supp. 736 and is republished

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 30(a).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.