**Desiree SLABIK**

v.

**John SORRENTINO, M.D., et al.**

**Civ. A. No. 95–2557.**

United States District Court, E.D. Pennsylvania.

June 30, 1995.

David S. Dessen, Philadelphia, PA, for plaintiff.

Dean F. Murtagh, Philadelphia, PA, for John Sorrentino, M.D.

Kenneth D. Powell, Jr., Philadelphia, PA, for Frankford Hosp.

## MEMORANDUM

BARTLE, District Judge.

Plaintiff Desiree Slabik ("Slabik") alleges that defendant Frankford Hospital failed to conduct a screening examination of her in violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. 1395dd(a), after she presented herself at its emergency room. She also alleges state law claims of defamation against the hospital and of malpractice against both the hospital and an emergency room physician, John Sorrentino, M.D. Presently before this court is the motion of defendants to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or, in the alternative, to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

According to the complaint, at approximately 4:40 a.m. on May 15, 1993, Slabik arrived by ambulance at the emergency room of Frankford Hospital, complaining of severe abdominal pain and diarrhea. Dr. Sorrentino examined plaintiff and ordered tests and x-rays. Slabik alleges that after these tests were administered, Dr. Sorrentino became convinced that she was not ill but was in fact on a quest for drugs. Dr. Sorrentino then discharged her from the emergency room

without giving her any follow-up instructions. The next day, Slabik was admitted to Nazareth Hospital, and on May 18, 1993, surgeons removed a ruptured appendix.

■ A complaint should be dismissed pursuant to Rule 12(b)(6) only where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). All well pleaded factual allegations in the complaint are assumed to be true and are viewed in the light most favorable to the plaintiff. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969), *Rocks v. Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989).

■ EMTALA was enacted as part of the Comprehensive Omnibus Budget Reconciliation Act of 1986 ("COBRA") amid growing concerns of inadequate emergency room care for poor and uninsured patients. H.R. No. 241, 99th Cong., 1st Sess., Part 3, at 5, U.S.Code Cong. & Admin.News, pp. 42, 726. The purpose of EMTALA is to prevent hospitals from refusing to provide emergency medical treatment or transferring patients before their emergency conditions are stabilized. *In re Baby "K",* 16 F.3d 590, 593 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 91, 130 L.Ed.2d 42 (1994). EMTALA protects all patients who enter an emergency room of a hospital that has signed a Medicare Provider Agreement. Frankford Hospital has signed such an agreement.

42 U.S.C. § 1395dd(a) requires a hospital to provide an "appropriate medical screening examination" to any individual admitted to the emergency room "to determine whether or not an emergency medical condition [as defined by the statute] exists." [1] The statute does not define the term "appropriate medical screening examination." *Holcomb v. Hu-*

*mana Medical Corp.,* 831 F.Supp. 829, 833 (M.D.Ala.1993), *aff'd sub nom. Holcomb v. Monahan,* 30 F.3d 116 (11th Cir.1994). The Court of Appeals for the Third Circuit has yet to address this issue. The Courts of Appeal for the Fourth, Sixth, and District of Columbia Circuits have held that § 1395dd(a) "entitles an individual to the standard screening procedure accorded by that hospital to other patients complaining of the same problem or exhibiting the same symptoms." *Id.*

■ EMTALA was designed to create a new cause of action for failure to screen and stabilize patients, not to federalize traditional state-based claims of negligence or malpractice. *See Reynolds v. Mercy Hosp.,* 861 F.Supp. 214, 219 (W.D.N.Y.1994), *Gatewood v. Washington Healthcare Corp.,* 933 F.2d 1037, 1041 (D.C.Cir.1991). The appropriateness of the medical screening is not determined by its adequacy in identifying the patient's illness. *Holcomb v. Monahan,* 30 F.3d 116, 117 (11th Cir.1994).

Slabik does not aver that Dr. Sorrentino failed to order tests that are normally ordered for similarly situated patients. Instead she contends that Dr. Sorrentino failed to instruct her as to how to obtain care should her condition not improve. She contends that because "other" patients do receive such instructions, the hospital violated § 1395dd(a). The purpose of a § 1395dd(a) screening is to determine whether an emergency medical condition exists. H.R. No. 241, 99th Cong., 1st Sess., Part 3, at 5, U.S.Code Cong. & Admin.News, p. 726. Once an emergency medical condition is found not to exist, the duties of § 1395dd(a) do not extend further.[2] As Dr. Sorrentino concluded that plaintiff was not ill, there were no instructions that would have been appropriate. Thus, plaintiff's EMTALA claim will be dismissed for failure to state a

---

**1.** 42 U.S.C. § 1395dd(a) provides, in pertinent part:

[I]f any individual ... comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, includ-

ing ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition ... exists.

**2.** If an emergency medical condition does exist, the physician's duties are delineated by 42 U.S.C. § 1395dd(b). Plaintiff does not allege a violation of this provision.

claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff's remaining claims against Frankford Hospital and defendant John Sorrentino, M.D., are state law claims. Diversity of citizenship does not exist. We will decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, we will dismiss these remaining claims.