Reynaldo RIOS, Appellant,

v.

BAPTIST MEMORIAL HOSPITAL SYSTEM d/b/a Northeast Baptist Hospital, Appellee.

No. 04–95–00740–CV.

Court of Appeals of Texas, San Antonio.

Sept. 18, 1996.

Rehearing Overruled Dec. 11, 1996.

David W. Rogers, Randy Gathany, Law Offices of Dave Rogers, Inc., San Antonio, for Appellant.

Michele Barber Chimene, Ruth Greenfield Malinas, Cynthia Day King, Ball & Weed, P.C., San Antonio, for Appellee.

Before LÓPEZ, STONE and HARDBERGER, JJ.

STONE, Justice.

In this appeal we are asked to construe the terms of the Emergency Medical Treatment and Active Labor Act, also known as the "anti-dumping" act.[1] Reynaldo Rios appeals from a summary judgment granted in favor of Baptist Memorial Hospital System d/b/a Northeast Baptist Memorial Hospital ("Baptist"). Rios brought suit against Baptist alleging failure to comply with 42 U.S.C.A. § 1395dd, the Emergency Medical Treatment and Active Labor Act ("the Act"). Rios now seeks reversal of the summary judgment, claiming the trial court misinterpreted the legal elements of a valid section 1395dd claim. Alternatively, Rios contends that a Bexar County district judge improperly ordered that his Motion for New Trial be heard before a judge in Williamson County. Because we find that Rios did not come to the emergency department or request emergency medical examination or treatment within the terms of the Act, we affirm the summary judgment.

## FACTUAL SUMMARY

Viewed in the light most favorable to Rios, the summary judgment evidence reveals the following: While working as a landscaper, Rios injured his arm when he came into contact with bushes sprayed with chemicals. Three days after receiving the injury Rios sought medical attention from his physician, Dr. Horn. In deposition testimony, Dr. Horn stated that Rios walked into his office unassisted, did not moan or cry in pain, and was in stable condition. He described the

---

**1.** The statute was enacted to eliminate the widespread problem of refusing to treat, or "dumping," indigent uninsured patients in medical emergencies. *See Stevison v. Enid Health Systems, Inc.*, 920 F.2d 710 (10th Cir.1990).

injury as moderately serious, but not life threatening. Dr. Horn thought a second opinion would be appropriate, and contacted Dr. Peter Holliman. At Dr. Holliman's request, Dr. Horn told Rios to meet Dr. Holliman at the Baptist emergency room. Dr. Horn stated that he did not intend to admit Rios to the Baptist emergency room; rather, he wanted Rios to be evaluated by Dr. Holliman.

Rios testified in his deposition that he understood from Dr. Horn's instructions that he was to be admitted to the hospital. Rios and his father thus proceeded to Baptist's emergency room with his swollen arm raised above his head. Rios stated that he and his father "just walked through" the emergency room, stopping only to ask for directions to the admitting department. Rios further testified that his father remarked that they did not need to go to the emergency room, they "just needed to go to admitting." Rios testified in his deposition that he never asked anyone at Baptist to examine him or to have a doctor examine him because he "already had a doctor." However, in his affidavit filed in opposition to the motion for summary judgment, Rios stated that both he and his father requested examination and treatment while Rios was in the admitting department. He also stated in his affidavit that he entered the emergency room with "an obvious emergency condition," and that the hospital personnel were aware of his "illness and pain." Rios was not admitted to Baptist, and received no treatment or evaluation there, allegedly because he had no insurance.

Rios left the admitting department and proceeded to the downtown Baptist Medical Center, where he was admitted. Rios claims that as a result of the four hour delay in treatment he suffered additional pain, and that an abscess in his arm burst shortly before he received treatment. Two doctors who treated Rios at the downtown Baptist Medical Center concurred that his condition was stable, he was never in danger of losing his arm or life, and he suffered no serious impairment to his bodily functions. The doctors further opined that the four hour delay in treatment posed no threat to Rios' health and did not result in additional lost time from work, greater medical bills, or disfigurement.

## SUMMARY JUDGMENT STANDARD OF REVIEW

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex. 1985); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the non-movant. *Nixon*, 690 S.W.2d at 548–49; *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984). Every reasonable inference from the evidence will be indulged in favor of the non-movant, and any doubts will be resolved in its favor. *Nixon*, 690 S.W.2d at 549; *Montgomery*, 669 S.W.2d at 311. Further, if conflicting inferences may be drawn from a deposition and an affidavit filed by the same party in opposition to a motion for summary judgment, a fact issue is presented. *Randall v. Dallas Power & Light Co.*, 752 S.W.2d 4, 5 (Tex. 1988).

## EMERGENCY MEDICAL TREATMENT AND ACTIVE LABOR ACT

In his first and second points of error, appellant complains that the trial court erred in granting summary judgment because there were genuine issues of material fact, and the trial court misinterpreted the legal requirements of his claim. Appellant brought suit against Baptist alleging failure to comply with 42 U.S.C.A. § 1395dd. This statute provides in pertinent part:

(a) *Medical screening requirement.*

In the case of a hospital that has a hospital emergency department, if any individual ... comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine

whether or not an emergency medical condition ... exists.

(b) *Necessary stabilizing treatment for emergency medical conditions and labor.*

(1) In general. If any individual ... comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either—

    (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or

    (B) for transfer of the individual to another medical facility in accordance with subsection (c).

Baptist sought summary judgment claiming it owed no duty to Rios under the Act because Rios: (1) did not present himself for treatment or evaluation at the emergency department; (2) did not suffer from an emergency medical condition; and (3) did not suffer any injury proximately caused by Baptist. The trial court entered a general order granting summary judgment, thus we will affirm the judgment on appeal if any of the theories advanced in the motion are meritorious. *See Rogers v. Ricane Enter., Inc.,* 772 S.W.2d 76, 79 (Tex.1989).

Under the Act, certain hospitals have a duty to provide anyone presented for treatment "an appropriate medical screening ... to determine whether or not an emergency medical condition ... exists." 42 U.S.C.A. § 1395dd(a). Claims arising under this subsection of the Act are generally referred to as "screening claims."

■ Rios agrees that the two essential elements of a screening claim include (1) coming to the emergency department and (2) requesting examination or treatment. As to the first element, Rios contends that because he walked through the emergency department, he met the statutory requirement that an individual come "to the emergency department." Alternatively, he contends that despite the statutory language, a hospital's duty to provide requested emergency screening is not dependent upon which door of the hospital a patient enters. As to the second

element—the request for examination or treatment—Rios contends that even if he did not verbally request treatment in the emergency department, his actions of walking through the emergency department with his swollen arm raised above his head were the equivalent of a request for examination and treatment.

Most courts which have considered the issue have held that a hospital's duty to provide a medical screening under section 1395dd(a) arises only when the patient seeks treatment from the emergency department. In *Baber v. Hospital Corp. of America,* 977 F.2d 872 (4th Cir.1992), a patient was transferred from one hospital to another, where she was admitted directly to the psychiatric unit. The court rejected the patient's screening claim against the second hospital because the patient never presented for treatment at the hospital emergency department. *Id.* at 884. The court determined, based on the explicit language of the statute, that a "hospital's duty to provide an appropriate medical screening arises only if the patient seeks treatment from the emergency department." *Id.*

In *Reynolds v. Mercy Hosp.,* 861 F.Supp. 214 (W.D.N.Y.1994), the court noted that not all subsections of section 1395dd require presentment at the emergency room. The court recognized, however, that subsection (a) "requires a medical 'screening' for patients *who present at a hospital emergency room....*" *Id.* at 222 (emphasis added). Since the patient was admitted to the hospital for a pre-arranged surgical procedure, the patient's screening claim under subsection (a) was dismissed. *Id.; see also Matter of Baby K,* 16 F.3d 590, 593 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 91, 130 L.Ed.2d 42 (1994) (recognizing that certain hospitals must provide appropriate medical screening for "any individual who comes to the emergency medical department requesting treatment"); *Miller v. Medical Center of Southwest Louisiana,* 22 F.3d 626, 629 (5th Cir.1994) (patient who was told on telephone that he would not be admitted never "came to" the emergency department, thus liability under the Act not established); *Johnson v. University of Chicago Hosps.,* 982 F.2d 230,

233 (7th Cir.1992) (patient who was rerouted to different hospital while still in ambulance never "came to" the emergency department, thus liability under the Act not established); *Stevison v. Enid Health Systems,* 920 F.2d 710, 712 (10th Cir.1990) (presentment to emergency room is essential element of § 1395dd claim); Alicia K. Dowdy et. al., *The Anatomy of EMTALA: A Litigator's Guide,* 27 ST. MARY'S L.J. 463, 470–75 (1996).

■ Rios relies on *McIntyre v. Schick,* 795 F.Supp. 777 (E.D.Va.1992), in support of his alternate position that the benefits of the Act are not dependent upon which door he entered. Unlike the instant case, *McIntyre* did not involve a failure to screen claim. Rather, the patient in *McIntyre* claimed that the defendant hospital failed to stabilize her condition before transferring her to another hospital, in violation of subsections (b) and (c) of section 1395dd. The court recognized that a claim for failure to screen under subsection (a) requires presentment to the emergency department, but found no such requirement for claims under subsections (b) and (c). *Id.* at 780. It is the court's discussion regarding claims under subsections (b) and (c) that Rios relies on. As stated by the court:

> [T]he rationale behind the COBRA patient anti-dumping statute is not based upon the door of the hospital through which a patient enters, but rather upon the notion of proper medical care for those persons suffering medical emergencies.... Indeed, it is a ridiculous distinction, one which places form over substance, to state that the care a patient receives depends on the door through which the patient walks.

*Id.* at 781. While we agree that basing a decision upon which door a patient entered seemingly places form over substance, even the *McIntyre* court acknowledged that a failure to screen claim *requires* presentment in the emergency department.[2]

■ In light of the statutory language and the relevant case law, we cannot accept Rios' contention that merely walking through the emergency department while enroute to another area of the hospital is the equivalent of presenting or coming to the emergency department and requesting examination or treatment. Rios' deposition testimony establishes that he did no more than walk through the emergency department, stopping only to ask an employee for directions to the admitting department. Further, it is uncontroverted that Rios never verbally asked for examination or treatment while in the emergency department. Rios testified that he asked no one for treatment while he was walking through the emergency department. This is not controverted by his affidavit, because in his affidavit Rios states only that he requested examination and treatment while in the admitting department. Rios went to the hospital expecting to be admitted and treated by Dr. Holliman, and thus proceeded to the admitting department to accomplish that task. Under such circumstances, Rios has not established a claim under section 1395dd(a). *See Reynolds v. Mercy Hosp.,* 861 F.Supp. at 222. To hold otherwise would indeed promote form over substance, granting Rios the benefits of the statute merely because he entered the hospital through the emergency department door.

■ Rios also contends, however, that by walking through the emergency department with a swollen arm raised in the air, he essentially requested treatment. Rios states in his affidavit that he entered the hospital "with an obvious emergency condition." Aside from Rios' inability to provide affidavit testimony on the medical issue of an "emergency condition," there is nothing in the summary judgment record to alter Rios' testimony that he merely walked through the emergency department while on his way to

2. There may be rare circumstances where physical presentment in the emergency department may not be required to trigger duties under section 1395dd. For example, a patient may enter through the "wrong door," and while enroute to the emergency department, the patient's emergency medical condition precludes the patient from reaching the emergency room. In such a case, it might well be determined that "applica-

tion of the literal terms of the statute will produce a result that is 'demonstrably at odds with the intentions of its drafters,' " thereby allowing the court to reach a decision that gives controlling effect to the legislative intent. *See Miller v. Medical Center of Southwest Louisiana,* 22 F.3d at 629 n. 6. There are no such unusual circumstances presented in the instant case.

the admitting department. Even if we were to hold that his mere entrance through the emergency room door triggered possible hospital duties to provide emergency screening, there is no summary judgment evidence from which we can even infer that Rios' actions constituted a request for screening. The only competent summary judgment evidence is that Rios was not suffering from an emergency condition. We therefore cannot conclude that Rios' swollen arm was sufficient notice that he was requesting emergency examination and treatment.[3]

We find that Rios did not come to Baptist's emergency department. We further find that Rios' actions of entering the emergency department with a raised swollen arm and asking for the location of the admitting department is not a request for examination or treatment. Accordingly, Baptist's duty to provide "an appropriate medical screening examination" never arose. *See* 42 U.S.C.A. § 1395dd(a); *Baber v. Hosp. Corp. of America,* 977 F.2d at 884. The trial court properly granted summary judgment for Baptist on Rios' failure to screen claim.

■■■ Rios further asserts that notwithstanding the outcome of his claim under section 1395dd(a), he is entitled to relief under section 1395dd (b). Before the hospital is obligated to provide treatment to an individual under section 1395dd(b), the hospital must first determine that the individual has an emergency medical condition. An additional duty arises if an emergency medical condition is discovered during the screening process. *In the Matter of Baby K,* 16 F.3d at 593. As discussed above, Rios never presented himself to the emergency room for treatment; therefore, the hospital never determined that he had an emergency condition. Further, the summary judgment evidence shows that the doctors who saw Rios immediately before and after his visit to Bap-

tist did not qualify Rios' injury as an "emergency." We find that Baptist is entitled to summary judgment on the section 1395dd(b) claim. Points of error one and two are overruled.

## MOTION FOR NEW TRIAL

■■ In his third and fourth points of error, Rios contends that a Bexar County district judge improperly ordered that his motion for new trial be heard before a district judge in Williamson County, a county of "impermissible venue." Thus, Rios claims the denial of the motion is void. Baptist's motion for summary judgment was heard in Bexar County by the Honorable John Carter, a visiting judge from Williamson County appointed pursuant to the Court Administration Act. TEX.GOV'T CODE ANN. § 74.001 et. seq. (Vernon 1988 & Supp.1996). Rios filed his motion for new trial and set the motion for hearing before the presiding court in Bexar County. Baptist requested, pursuant to local rule 3.11,[4] that the motion for new trial be heard before Judge Carter. Rios contends Judge Berchelmann of Bexar County ordered, over his objection, that the motion for new trial be heard in Williamson County before Judge Carter. The record before this Court, however, does not contain any order which would *require* the parties to travel to Williamson County for the hearing on the motion for new trial. Thus, even if such an order were erroneous, Rios has not met his burden to bring forth a record demonstrating reversible error. TEX.R.APP.P. 50(d), 53(k); *Murray v. Devco, Ltd.,* 731 S.W.2d 555, 557 (Tex.1987).

However, there is a more fundamental reason why no error is presented. Baptist was entitled to summary judgment on the section 1395dd claim; consequently, Rios was not

---

**3.** We do not mean to imply that section 1395dd(a) imposes a burden on Rios to prove the existence of an emergency medical condition. Rather, we look to all of the summary judgment evidence to determine if there is any support for Rios' claim that his physical appearance or actions constituted a non-verbal request for treatment. The testimony of the treating doctors is the only competent evidence on this issue, and it does not support Rios' claim.

**4.** 3.11 *Contested Trials.* With the exception of post-judgment discovery and enforcement proceedings, after a contested trial on the merits, all motions shall be scheduled with and heard by the judge who presided over the trial.

   Rule 3.11 of the Bexar County District Court Rules of Practice, Procedure and Administration

entitled to a new trial. Points of error three and four are therefore overruled.

The judgment of the trial court is affirmed.