**Minerva CANTU and Raul Cantu, Appellants,**

v.

**Jorge F. PEACHER, M.D., Appellee.**

**No. 04–00–00279–CV.**

Court of Appeals of Texas, San Antonio.

Feb. 7, 2001.

Rehearing Overruled April 23, 2001.

---

David M. Adkisson, David M. Adkisson, P.C., San Antonio, for Appellant.

George Brin, Brin & Brin, P.C., San Antonio, Linda C. Breck, Thomas F. Nye, Brin & Brin, P.C., Corpus Christi, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, KAREN ANGELINI, Justice.

## OPINION

PHIL HARDBERGER, Chief Justice.

This medical malpractice case, which terminated at the trial level by summary judgment in favor of the physician, involves the issue of the legal effect of variations between the deposition testimony and the affidavit testimony of the same witness. There are two lines of cases: one holds that the conflicting inferences from the deposition and the affidavit create a fact issue that will defeat a motion for summary judgment. *Randall v. Dallas*

*Power & Light Co.*, 752 S.W.2d 4, 5 (Tex. 1988). The other holds that if a witness's own affidavit contradicts the earlier deposition testimony then the affidavit must explain the reason for the change or the court will consider the affidavit an attempt to create a "sham" fact issue which will not defeat a motion for summary judgment. *Farroux v. Denny's Restaurants, Inc.*, 962 S.W.2d 108, 111 (Tex.App.—Houston [1st Dist.] 1997, no pet.). Each of the cases that have examined the issue are fact specific, and a careful examination shows that a court must, at the expense of a bright line definition, examine the nature and extent of the differences in the facts asserted in the documents to determine what effect a conflict should be given in a particular case.

### FACTS AND PROCEDURAL BACKGROUND

Minerva Cantu ("Minerva"), a forty-seven-year-old mother of four children, was experiencing significant female problems, including incontinence and a fallen bladder. Surgery was performed by Dr. Jorge Peacher ("Peacher") on December 16, 1996 to correct the bilateral paravaginal defects. Extensive suturing was required, among other things, to reattach the lateral vaginal wall to the pelvic sidewall. Post-surgical complications were not long in coming.

The day after the surgery, Minerva experienced cramping, pain, and weakness in her left leg. Two days later, Minerva's left leg collapsed, and she was unable to walk. Minerva left the hospital using a walker. Peacher continued to treat Minerva, and there were several neurological consults trying to deal with her continuing pain. The doctors believed that Minerva's problems probably stemmed from some damage to the obturator nerve that had occurred during the operation. The damage could have been caused by the nerve being inadvertently stitched, or there could

have been a nerve stretch injury caused by the sutures running through ligaments and other body parts that were tightened by the operative repair. Whatever the cause, on August 13, 1997, a subsequent operation was performed by Dr. David Kline ("Kline"). Kline found the obturator nerve had been damaged and removed a part of it. This reduced the pain, but Minerva later suffered other complications including deep vein thrombosis. This, too, required an operation. It is the plaintiffs' position, and that of the plaintiffs' expert, Dr. Harold Miller ("Miller"), that many of these complications could have been avoided by the timely re-exploration of the operative site when the problems started occurring.

Minerva's original petition alleged that Peacher was negligent in his: (1) placement of sutures during the original surgical procedure, (2) failure to timely diagnose and treat the obturator nerve injury, and (3) failure to timely perform an obturator nerve exploration with excision of the obturator nerve. Miller testified in his deposition that he assumed that Peacher had sutured the obturator nerve in the first surgery. This assumption was wrong. When the subsequent surgery was performed by Kline, no sutures were found in the obturator nerve. Peacher testified that because he only uses permanent sutures, any sutures he placed during the original surgery would have been present when Kline performed the subsequent surgery. A Second Amended Petition was filed before the summary judgment hearing, but the negligence allegations remained the same.

Peacher moved for summary judgment on the basis that he met the appropriate standard of care both during the surgical procedure and during the follow-up care. Peacher further contended that he did not proximately cause Minerva's injuries. The

trial court granted Peacher's motion for summary judgement, and the Cantus appeal.

## STANDARD OF REVIEW

■ A party moving for summary judgment must show that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). In reviewing the grant of a summary judgment, we must indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *Johnson*, 891 S.W.2d at 644; *Nixon*, 690 S.W.2d at 549. In addition, we must assume all evidence favorable to the nonmovant is true. *Johnson*, 891 S.W.2d at 644; *Nixon*, 690 S.W.2d at 548–49.

■ A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of the plaintiff's cause of action. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). Once the movant has established a right to summary judgment, the burden shifts to the nonmovant to present evidence that would raise a genuine issue of material fact. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979).

## CONFLICTING STATEMENTS

In his motion for summary judgment, Peacher challenged the opinion given by Minerva's expert, Dr. Harold Miller ("Miller"). Peacher contended that Miller's only criticism of Peacher's conduct was based on his assumption that the neuroma that was found at the time of Minerva's second surgery was caused by a suture placed by Peacher during the first surgery. Peacher asserted that Miller's assumption was flawed because no suture was found on Minerva's obturator nerve during the second surgery. Peacher stated that he only used permanent sutures, so any suture he applied would have been present at the time of the second surgery. Peacher further stated, in his affidavit attached to his motion for summary judgment, that he properly placed permanent sutures during the first surgery, which were consistent with the applicable standard of care, and that his care and treatment of Minerva "met or exceeded medical standards of care." Peacher concluded that nothing he did or failed to do "proximately caused or contributed to cause any damage" to Minerva.

After Peacher filed his motion for summary judgment, Miller filed an affidavit on January 21, 2000 that varied in some respects from his deposition testimony which had been taken a month before, on December 15, 1999. In his affidavit, Miller abandoned his assumption that Peacher sutured through the obturator nerve. However, Miller explained that the sutures did not have to go through the nerve itself to cause Minerva's damage. Miller asserted that the sutures can be applied in such a way as to stretch the obturator nerve, thereby damaging it. Miller explained that a surgeon exerts tension when applying the paravaginal sutures:

> This tension in turn can pull the obturator nerve up to the pubic bone resulting in a stretch of the nerve. Over time, the nerve would then fall back to its original location with the development of neuroma. This would account for the lack of sutures found on the nerve during Dr. Kline's surgery in August of 1997.

Therefore, Miller contended in his affidavit that the sutures placed by Peacher during the initial operation stretched the obturator nerve, causing the symptoms experienced by Minerva. Miller then reasserted

the position upon which he was always consistent:

> When Ms. Cantu became symptomatic after the surgery, obturator nerve compromise should have been considered and acted upon by Dr. Peacher, i.e., re-exploration. Re-exploration as required by the standard of care, would have resulted in the release of pressure on the obturator nerve and would have, in all probability prevented the development of the neuroma.

In determining the effect that the conflict between Miller's deposition testimony and his affidavit should have for purposes of summary judgment, it is useful to review the cases dealing with conflicts between deposition and affidavit testimony.

The most tolerant view of conflicting statements between the same witness's testimony in a deposition and affidavit is in the case of *Randall v. Dallas Power & Light Company*, 752 S.W.2d 4, 5 (Tex. 1988). Randall, the plaintiff in an automobile accident case, testified in his affidavit that the defendant's claims agent had made generous promises to him in regard to future damages and appropriate compensation. *Id.* at 4–5. Unfortunately for him, when his deposition was taken, Randall stated that he could not remember any representations being made by the claims agent regarding future damages or expenses. *Id.* at 5. The trial judge granted the summary judgment, and the appeals court affirmed. The Texas Supreme Court reversed the summary judgment, explaining that "a deposition does not have controlling effect over an affidavit in determining whether a motion for summary judgment should be granted." *Id.* In its analysis, the Court asserted:

> Thus, if conflicting inferences may be drawn from a deposition and from an affidavit filed by the same party in opposition to a motion for summary judg-

ment, a fact issue is presented.... In this instance, conflicting inferences can definitely be drawn from the deposition and affidavit testimony. In the affidavit, Randall testified that Moore made definite representations to him regarding future damages, whereas, in the deposition, he stated that he did not remember any representations pertaining to future damages.

*Randall*, 752 S.W.2d at 5. Because the defendant did not meet his burden of showing that there was no genuine issue as to any material fact, the Court held that the summary judgment was improperly granted.

In the case of *Knetsch*, this court was confronted with a summary judgment that has some similarities to the case presently before the court. *Knetsch v. Gaitonde*, 898 S.W.2d 386, 388 (Tex.App.—San Antonio 1995, no pet.). The trial court granted a summary judgment based on several instances where the plaintiff's expert contradicted his own testimony and affidavit. *Knetsch*, 898 S.W.2d at 388. This court reversed the granting of summary judgment stating:

> This court agrees that the expert's testimony can be argued to be inconsistent, and that instances of conflict can be found between the affidavit and the expert's deposition. More certitude is expressed in the affidavit than under the press of cross-examination in the deposition, but this does not negate the testimony. It is impeachment material. The words in the affidavit do raise a fact issue.

*Id.*

The First Court of Appeals found that the disparities between a witness's deposition and affidavit testimony can be so disparate as to amount to nothing but a "sham" in the case of *Farroux v. Denny's Restaurants, Inc.*, 962 S.W.2d 108, 111

(Tex.App.—Houston [1st Dist] 1997, no pet.). In that case, the court determined that the differences had moved from explaining to dissembling simply to create a fact issue. *Id.* The facts were aggravated. The plaintiff sued a restaurant, Denny's, claiming that Denny's had served him bad eggs which made him ill. *Id.* at 109–10. Denny's denied that its eggs were bad and asserted that the plaintiff's problem could have been caused by his large intake of other food that had no connection with Denny's. *Id.* at 110. The plaintiff admitted in his deposition that no doctor told him why he was ill, nor did any doctor tell him that the eggs he ate at Denny's made him ill. *Id.* at 111. After Denny's filed their motion for summary judgment, the plaintiff filed an affidavit at total variance with his deposition testimony. *Farroux,* 962 S.W.2d at 111. The plaintiff stated in his affidavit that the doctor had told him that he had food poisoning, that food from other sources did not cause his problems, and that the bad food from Denny's was the source of the food poisoning. *Id.* No attempt was made to explain this direct and total contradiction of his earlier testimony. In affirming the summary judgment, the court of appeals reasoned:

> A party cannot file an affidavit to contradict his own deposition testimony without any explanation for the change in the testimony, for the purpose of creating a fact issue to avoid summary judgment. If a party's own affidavit contradicts his earlier testimony, the affidavit must explain the reason for the change. Without an explanation of the change in testimony, we assume the sole purpose of the affidavit was to avoid summary judgment. As such, it presents merely a "sham" fact issue.

*Farroux,* 962 S.W.2d at 111. The court noted that an affiant could explain the contradiction by stating he was confused in a deposition or that he discovered additional, relevant materials after the deposition. *Id.* at 111 n. 1.

Most differences between a witness's affidavit and deposition are more a matter of degree and details than direct contradiction. This reflects human inaccuracy more than fraud. For example, the *Hale* case, recently decided by the Fort Worth Court of Appeals, was an automobile accident case that centered on the defendant police officer's conduct immediately before the collision. *Hale v. Pena,* 991 S.W.2d 942, 946–47 (Tex.App.—Fort Worth 1999, no pet.). The policeman, Officer Hale, stated in his affidavit that he was decreasing his speed as he approached the intersection. *Id.* However, in his deposition, Officer Hale conceded that he did not know how fast he was traveling, and the accident report showed that Officer Hale's car skidded 114 feet before striking the plaintiff's car. *Id.* at 947. The trial court held that there was a fact question, precluding summary judgment, and the appeals court affirmed, stating, "When conflicting inferences may be drawn between a party's summary judgment affidavit and his deposition on matters of material fact, a genuine fact issue is created." *Hale,* 991 S.W.2d at 946–47.

■ Having reviewed the different lines of cases, we conclude that a court must examine the nature and extent of the differences in the facts asserted in the deposition and the affidavit. If the differences fall into the category of variations on a theme, consistent in the major allegations but with some variances of detail, this is grounds for impeachment, and not a vitiation of the later filed document. If, on the other hand, the subsequent affidavit clearly contradicts the witness's earlier testimony involving the suit's material points, without explanation, the affidavit

must be disregarded and will not defeat the motion for summary judgment.

 In the present case, Miller's affidavit is generally consistent with the original petition and his earlier deposition testimony. The thrust of both the lawsuit and Miller's testimony is that something went wrong in the first operation and the symptoms experienced by Minerva subsequent to the operation required, in reasonable medical prudence, a timely re-operation to correct the problem. Because a re-operation was not timely performed, Minerva experienced permanent damage.

Miller's affidavit changes his assumption regarding the manner in which Peacher placed the sutures, but his opinion does not change regarding the cause of Minerva's damages. At most, the conflict between Miller's deposition testimony and his affidavit arguably has a damaging effect on the first allegation of negligence: "failure to properly place paravaginal sutures during the [first] surgical procedure," given the attendant trial problems of impeachment between the two testimonies. Miller's deposition testimony and affidavit are inconsistent in his assumption with regard to what went wrong during the first operation; however, the original petition merely alleged that Peacher was negligent in his placement of the sutures. Miller's position is that Peacher would be negligent whether he placed the sutures through the obturator nerve or in a position to cause the obturator nerve to stretch. Peacher may use the inconsistency in Miller's testimony to impeach him at trial with regard to Peacher's alleged negligence in placing the sutures; however, the inconsistency does not detract from the nature of the allegation in the petition or Peacher's potential negligence for improper placement of the sutures.

In addition, the conflict in Miller's testimony would have no effect on the negligent allegations of Peacher's "failure to timely diagnose and treat Plaintiff's obturator nerve injury" and "failure to timely perform an obturator nerve exploration with excision of the obturator nerve." Miller never varied his opinion, originally stated in his medical report of May 11, 1998, that a new operation was required long before it happened, and the delay caused "a cascade of complications" that were foreseeable. In short, in both his deposition and his affidavit, Miller's position was that, regardless of the reason for the nerve damage, a remedial operation needed to be performed quickly before other complications occurred. According to Miller, the failure to perform the subsequent surgery for seven months was negligence and the proximate cause of many of Minerva's damages.

Miller's affidavit testimony is not the type that can be characterized as simply being a "sham" to defeat a summary judgment motion. We recognize some variances between Miller's deposition testimony and his affidavit, but we do not consider the differences to be so material that we must disregard the affidavit.

### SPECULATIVE AND CONCLUSORY AFFIDAVIT

 The second argument offered by Peacher is that Miller's affidavit is deficient because it was speculative and conclusory for failing to demonstrate the medical basis for Miller's opinions. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991). We find this argument unpersuasive. Miller's affidavit is the culmination of his expert medical opinion after reviewing twelve medical documents and reports related to Minerva's case. Miller detailed the opinions of the consulting neurosurgeons, and Peacher's failure to heed their suggestions in a timely fashion. Miller relies on the reports of consulting neurosurgeons and the observations made by

Dr. Kline during the second surgery to conclude that the placement of the sutures by Peacher caused the obturator nerve injury. Miller further relies on the neurological damage discovered during the subsequent surgeries, and the medical records regarding the amount of time that had elapsed, to conclude that Peacher's failure to explore the possibility of nerve damage once Minerva's symptoms surfaced breached the standard for follow-up care. Miller's affidavit is, therefore, not speculative or conclusory.

### CONCLUSION

The evidence before the court is sufficient to raise a genuine issue of material fact, making summary judgment improper. The trial court's judgment is reversed, and the cause is remanded to the trial court for a trial on the merits.

Concurring opinion by: KAREN ANGELINI, Justice.

ANGELINI, Justice, concurring.

I concur in the judgment only because I do not agree with the majority's analysis of this case. If, as the majority concludes, Dr. Miller's deposition testimony and affidavit testimony are materially consistent, then the only question we need to address is whether a genuine issue of material fact exists, thereby precluding entry of summary judgment. TEX.R. CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex.1979).

If, on the other hand, Dr. Miller's deposition testimony and affidavit testimony do materially conflict, then we need look no further than *Randall v. Dallas Power & Light Co.*, 752 S.W.2d 4 (Tex.1988). In *Randall*, the Texas Supreme Court held that "if conflicting inferences may be drawn from a deposition and from an affidavit filed by the same party in opposition to a motion for summary judgment, a fact issue is presented."[1] *Id.* at 5. I cannot agree with the majority's reliance on *Farroux v. Denny's Restaurants, Inc.*, 962 S.W.2d 108 (Tex.App.—Houston [1st Dist.] 1997, no pet.) because, in that case, the Houston court, without reference to *Randall*, holds that unexplained conflicting deposition and affidavit testimony offered by the same party will not defeat summary judgment. This is directly contrary to the Supreme Court's holding in *Randall*.[2]

Based on my review of Dr. Miller's deposition testimony and his affidavit, I would hold that they do materially conflict. In his deposition, Dr. Miller testified that Dr. Peacher sutured Mrs. Cantu's obturator nerve and, when she began experiencing symptoms, he should have re-operated to remove the suture. Dr. Miller went so far as to say that if he were one hundred percent certain that the obturator nerve had not been sutured, he would find no fault with Dr. Peacher. Dr. Peacher's summary judgment motion established that he used permanent sutures on Mrs. Cantu, and no suture was found on the obturator nerve during the subsequent surgery.

---

1. The Randall case has been cited and followed in numerous cases since it was decided in 1988. *See, e.g., Sosebee v. Hillcrest Baptist Med. Ctr.*, 8 S.W.3d 427, 435 (Tex.App.— Waco 2000, pet. denied); *Bauer v. Jasso*, 946 S.W.2d 552, 556 (Tex.App.—Corpus Christi 1997, no pet.); *Rios v. Baptist Mem'l Hosp. Sys.*, 935 S.W.2d 799, 801 (Tex.App.—San Antonio 1996, writ denied).

2. The majority characterizes the *Randall* and the *Farroux* cases as representing two lines of cases. *Randall* is a Supreme Court case, however, while *Farroux* is a court of appeals case. We are duty-bound to follow the holdings of the Texas Supreme Court, not those of our sister courts of appeals.

In response to the motion for summary judgment, Dr. Miller, by affidavit, stated that the obturator nerve was stretched and Dr. Peacher should have re-operated to release the pressure on the nerve. Although Dr. Miller states, in both his deposition and affidavit, that Dr. Peacher breached the standard of care, he nevertheless reaches two different conclusions regarding how the standard of care was breached. This is a material conflict. I would find that the Supreme Court's holding in *Randall* requires this court to reverse the summary judgment.