Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# MEMORANDUM OPINION

No. 04-11-00332-CV

**IN RE THE ESTATE OF FRANCISCO JULIO LERMA SANCHEZ**, Deceased

From the County Court At Law No. 1, Webb County, Texas
Trial Court No. 2009PB4000055L1
Honorable Alvino (Ben) Morales, Judge Presiding

Opinion by:   Steven C. Hilbig, Justice

Sitting:   Rebecca Simmons, Justice
Steven C. Hilbig, Justice
Marialyn Barnard, Justice

Delivered and Filed:  April 18, 2012

REVERSED AND REMANDED

Carmen Viera-Peňa de Lerma ("Carmen") filed a petition to establish an informal marriage with the late Francisco Julio Lerma-Sanchez ("Francisco"), whose estate is pending in probate court.  Claudio Lerma Torres, Adrian Lerma Martinez, Julio Francisco Lerma Torres, Victor Manuel Lerma Torres, Maria De Los Angeles Lerma, and Clementina Lerma De Arzagoitia, Francisco's children (hereinafter "the children"), filed no-evidence and traditional motions for summary judgment, asserting there was no informal marriage between Carmen and Francisco.  The trial court granted the motions for summary judgment and Carmen appeals.  Carmen also complains on appeal that the trial court erred in canceling and expunging the notices of lis pendens.

**BACKGROUND**

Francisco died in April 2009, and the administration of his estate was filed in County Court at Law No. 1 in Laredo, Texas. Carmen filed a petition to establish an informal marriage to Francisco. Carmen's response to the motions for summary judgment included her affidavits,[1] in which Carmen stated she and Francisco lived together for approximately thirteen years and had two children together. She stated they began living together in Laredo, Texas in December 1995, at which time she claims they agreed to be married. In her second affidavit, she also stated she and Francisco reiterated their agreement to be married several times while they lived in Texas. She attested they continued to live in Laredo until mid-1996, at which time they left Laredo and moved to Mexico. Carmen stated she and Francisco returned to Laredo in December 2007 and lived there until 2009. Carmen also stated in her second affidavit she and Francisco represented to people in Texas, on numerous occasions, that they were married. She stated these representations were made to hotel employees where they lived and to restaurant personnel where they dined.

**STANDARD OF REVIEW**

When filing a no-evidence motion for summary judgment, the movant must specifically challenge the evidentiary support for an element of a claim or defense. TEX. R. CIV. P. 166a(i) cmt. (1997). The movant is entitled to summary judgment if it can prove, as a matter of law, that the opponent failed to produce legally sufficient evidence to support its theory of liability or defense after adequate time for discovery. *Id*. Once the movant files a no-evidence motion for summary judgment, the respondent has the burden to produce summary judgment evidence raising a genuine issue of material fact on the challenged element. *Id*.; *Ford Motor Co. v.*

---

[1] We do not address Carmen's other summary judgment evidence or the objections to that evidence because Carmen's affidavits are sufficient to raise a fact issue on her claim that she and Francisco were married.

*Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). However, the non-movant is not required to marshal its proof; he need only present some evidence of probative value raising a fact issue about which reasonable minds could differ. TEX. R. CIV. P. 166a(i) cmt. (1997); *Johnson v. Brewer & Pritchard*, P.C., 73 S.W.3d 193, 207 (Tex. 2002). We view the evidence in the light most favorable to the non-movant and disregard all contrary evidence and inferences. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

A traditional motion for summary judgment requires the movant to establish there is no genuine issue of material fact and he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Little v. Texas Dept. of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004); *KPMG Peat Marwick v. Harrison Cnty. Houston Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). The movant has the burden to conclusively disprove one element of the challenged cause of action or to conclusively prove all of the elements of an affirmative defense. *Little*, 148 S.W.3d at 381; *Pustejovsky v. Rapid-American Corp.*, 35 S.W.3d 643, 645-46 (Tex. 2000). "'When reviewing a motion for summary judgment, the court takes the nonmovant's evidence as true, indulges every reasonable inference in favor of the nonmovant and resolves all doubts in favor of the nonmovant.'" *Little*, 148 S.W.3d at 381(quoting *M.D. Anderson Hosp. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000).

## SHAM AFFIDAVIT OBJECTION

The children assert the trial court erred in overruling their objection that Carmen's affidavits were "sham" affidavits. An allegation that an affidavit is a sham generally occurs when a party files an affidavit to avoid a summary judgment and the affidavit testimony is in direct and total contradiction with the affiant's deposition testimony. *Farroux v. Denny's Rest., Inc.*, 962 S.W.2d 108, 111 (Tex. App.—Houston [1st Dist.] 1997, no pet.). A sham affidavit

must be disregarded by the court. *Cantu v. Peacher*, 53 S.W.3d 5, 10-11 (Tex. App.—San Antonio 2001, pet. denied). In *Cantu*, this court concluded that when determining whether an affidavit is a sham, the court must examine the nature and extent of the differences in the facts asserted in the deposition and the affidavit. *Id.* at 10. "If the differences fall into the category of variations on a theme, consistent in the major allegations but with some variances of detail, this is grounds for impeachment, and not a vitiation of the later filed document. If, on the other hand, the subsequent affidavit clearly contradicts the witness's earlier testimony involving the suit's material points, without explanation, the affidavit must be disregarded and will not defeat the motion for summary judgment." *Id.* at 10-11.

The children claim Carmen's July 2010 affidavit, filed in relation to the administration of Francisco's estate and in which she stated Francisco's "residence and domicile was in the Republic of Mexico," was in direct contradiction of her later testimony regarding the time she and Francisco cohabitated in Laredo. We disagree. First, the statements in the July 2010 affidavit do not reference a specific time period that Francisco's residence and domicile was in Mexico. Furthermore, when asked during her deposition about the July 2010 affidavit, Carmen explained that Francisco's domicile and residence was in both Laredo and in Mexico. Additionally, having a domicile and residence in Mexico does not necessarily preclude Francisco living in Laredo during the time periods Carmen claims she and Francisco cohabitated in Texas.

The children also contend Carmen's affidavits filed in response to the summary judgment motions conflict with her testimony at a hearing in probate court. They claim Carmen testified she was not living in the United States until 2011 due to her immigration status. However, Carmen testified she used a border crossing card to enter Texas up until she received a student visa in 2011. Carmen stated that she was not allowed by law to live in the United States until

January 2011. Carmen was asked "you wouldn't have broken the law by coming here before then, correct" and she responded "no, I wouldn't have broken the law because there is…so many enemies." These statements are not a direct contradiction of her testimony that she lived in Laredo with Francisco. We conclude the affidavits filed in response to the summary judgment motions are not sham affidavits, and the trial court did not err in overruling the children's objections.

### ELEMENTS OF COMMON LAW MARRIAGE

"Common law marriages have been recognized in Texas since 1847."[2] *Russell v. Russell*, 865 S.W.2d 929, 931 (Tex. 1993) (citing *Tarpley v. Poage's Adm'r*, 2 Tex. 139, 149 (1847)). A common law marriage has three requirements: (1) the parties agreed to be married; (2) the parties lived together as husband and wife in Texas after they agreed to be married; and (3) the parties represented to others that they were married. TEX. FAM. CODE ANN. § 2.401(a)(2) (West 2006); *Russell*, 865 S.W.2d at 932; *Palacios v. Robbins*, No. 04-02-00338-CV, 2003 WL 21502371, *3 (Tex. App.—San Antonio July 2, 2003, pet. denied) (mem. op.). All three elements must exist at the same time. *Palacios*, 2003 WL 21502371, at *3.

To establish an agreement to be married, "the evidence must show the parties intended to have a present, immediate, and permanent marital relationship and that they did in fact agree to be husband and wife." *Eris v. Phares*, 39 S.W.3d 708, 714 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). The agreement to be married may be established by direct or circumstantial evidence. *Russell*, 865 S.W.2d at 933. The testimony of one of the parties to the marriage constitutes direct evidence the parties agreed to be married. *See Eris*, 39 S.W.3d at 714; *In re*

---

[2] "Informal marriage" is the statutory term used to describe what is colloquially known as a common law marriage. *See* TEX. FAM. CODE ANN. § 2.401 (West 2006).

*Estate of Giessel*, 734 S.W.2d 27, 32 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). The conduct of the parties and evidence of cohabitation and representations to others may constitute circumstantial evidence of an agreement depending upon the facts of the case. *See Russell*, 865 S.W.2d at 933; *Eris*, 39 S.W.3d at 714. Cohabitation need not be continuous. *See Bolash v. Heid*, 733 S.W.2d 698, 699 (Tex. App.—San Antonio 1987, no writ) (holding evidence sufficient to establish cohabitation where husband worked in Nigeria but lived with wife each time he returned to Texas). As with all of the elements of common law marriage, cohabitation is determined on a case-by-case basis. *See Estate of Claveria v. Claveria*, 615 S.W.2d 164, 166 (Tex. 1981).

The statutory requirement of "represent[ing] to others" is synonymous with the judicial requirement of "holding out to the public." *Compare* TEX. FAM. CODE ANN. § 2.401(a)(2) (West 2006) *with Claveria*, 615 S.W.2d at 166. "'Holding out' may be established by the conduct and actions of the parties." *Eris*, 39 S.W.3d at 715. "Spoken words are not necessary to establish representation as husband and wife." *Id*. Written references to the marriage or to a party as "spouse" are evidence of "holding out." *See Claveria*, 615 S.W.2d at 167 (holding recorded deed in which parties represented they were married was evidence of common law marriage); *Persons v. Persons*, 666 S.W.2d 560, 563 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) (holding reference to one party as "spouse" in credit application was evidence of holding out).

## ANALYSIS

The children contend Carmen's testimony regarding whether she and Francisco had an agreement to be married is conclusory and as such is insufficient to raise a fact issue. "A conclusory statement is one that does not provide the underlying facts to support the conclusion."

*Trejo v. Laredo Nat. Bank*, 185 S.W.3d 43, 50 (Tex. App.—San Antonio 2005, no pet.)(quoting

*Haynes v. City of Beaumont*, 35 S.W.3d 166, 178 (Tex. App.—Texarkana 2000, no pet.).

In Carmen's second affidavit, she stated "[w]e expressly agreed to be married in December of 1995, when we began living together, and thereafter expressly reiterated our agreement several times to each other when we were living in Texas." This testimony is a statement of fact and not a mere conclusion that requires further explanation or detail. *Id.* Additionally, Carmen testified during her deposition that she and Francisco agreed to be married while staying at the Family Garden Hotel in Laredo because "[i]t was a new life that we were beginning." This testimony provides additional evidence regarding the agreement to be married. Carmen's affidavit and deposition testimony is sufficient to raise a fact issue on whether she and Francisco agreed to be married. *See Collora*, 574 S.W.2d at 70 ("Ollie's testimony that she and Joe had "agreed to a marriage" was direct testimony of an agreement to be married and was enough to raise the issue of agreement"); *see also Giessel*, 734 S.W.2d at 32 (testimony of one party that they had agreed to be married "in God's eyes" was direct evidence of agreement to be married).

The children also contend Carmen's testimony regarding cohabitation is conclusory and does not raise a fact issue. Carmen stated she lived with Francisco in Laredo, Texas for "approximately six months from the end of 1995 to mid-1996" and again from December 2007 to February 2009. This testimony is not conclusory; rather, it is a statement of fact. *See Trejo*, 185 S.W.3d at 50.

The children also argue the six-month period in 1995 and the fifteen-month period from December 2007 to February 2009 was not a continuous period of cohabitation as required by the statute. However, cohabitation need not be continuous. *See Bolash*, 733 S.W.2d at 699. In

*Bolash*, the defendant was employed in Nigeria and would on occasions spend time in this country. *Id*. According to plaintiff's testimony, she and the defendant agreed to be husband and wife one night when the defendant was visiting. *Id*. The defendant left San Antonio the following day, but according to the plaintiff's testimony, he returned to San Antonio several times during the next four years and stayed with plaintiff on each occasion. *Id*. She testified they traveled together on occasion to New York, Atlanta, Las Vegas and Europe. *Id*. The court determined that, although defendant testified he had returned to this country several times when he did not see plaintiff, and although the plaintiff admitted she did not know where defendant worked in Nigeria and did not know how to get in touch with him there, her testimony that they were together each time he came to this country was sufficient to support the finding they lived together as husband and wife to the extent possible under the circumstances. *Id*. Thus, even if there were gaps of time when Carmen and Francisco did not live together in Laredo does not negate the cohabitation element. Carmen's testimony is sufficient to raise a fact issue on cohabitation.

The children also contend Carmen's 2010 affidavit placed Francisco's "residence and domicile" in Mexico, which would make cohabitation in Texas a "factual impossibility." However, as discussed above, Carmen clarified in her deposition that Francisco's residence and domicile was in both Mexico and Laredo. The children argue there is ample evidence to disprove that Carmen and Francisco cohabited in Texas. However, we must disregard this evidence because in an appeal of a summary judgment the evidence must be viewed in the light most favorable to Carmen and all contrary evidence and inferences must be disregarded. *King Ranch, Inc.*, 118 S.W.3d at 751.

Finally, the children argue Carmen's testimony related to the holding out element is conclusory and does not raise a fact issue. In her second affidavit, Carmen stated she and Francisco represented to Francisco's employees as well as to hotel and restaurant personnel in Texas they were married. These are statements of fact and are not conclusions. *See Trejo*, 185 S.W.3d at 50.

The children rely on *Nichols v. Lightle*, 153 S.W.3d 563, 570-71 (Tex. App.—Amarillo 2004, pet. denied) to support their argument that Carmen's testimony is insufficient to raise a fact issue. However, their reliance is misplaced. In *Nichols*, the only evidence regarding the holding out element was the statement "we held out to others that we were husband and wife." *Id*. The court held this statement was conclusory because it merely paraphrased the statute's language and contained no specific factual basis for the statement. *Id.* Accordingly, the statement was not sufficient to raise a genuine issue of fact. *Id.* However, Carmen's testimony provides more information than simply paraphrasing the statute and is sufficient to raise a fact issue. Although the children point to evidence that contradicts Carmen's testimony, for summary judgment purposes this evidence must be disregarded. *King Ranch, Inc.*, 118 S.W.3d at 751.

**LIS PENDENS**

The administrator of the estate filed an application to sell a commercial warehouse owned by Francisco. Carmen filed an objection, asserting, among other things, that the property was presumptively community property because Francisco was her common law husband and she had a fee simple interest in the property. The trial court entered an order authorizing the sale, and Carmen filed a notice of lis pendens and an amended notice of lis pendens.

The estate administrator filed a motion to cancel the notices and to waive bond pursuant to section 12.008 of the Texas Property Code. The administrator asserted Carmen failed to comply with the statutory requirement that the notice of lis pendens be served on each party to the action. The administrator also pleaded that if the children's pending motions for summary judgment were granted, Carmen would not have an interest in the property and the administrator could proceed with the sale. After granting the motions for summary judgment, the trial court entered an order canceling the lis pendens and waived the bond requirement.

Before the trial court granted the motion to cancel the lis pendens, Carmen appealed the trial court's order granting the children's motions for summary judgment. After the motion to cancel the lis pendens was granted, Carmen amended her notice of appeal to include the trial court's order canceling the lis pendens. Carmen also filed a second notice of lis pendens. Four days after the second notice of lis pendens was filed, the trial court sua sponte entered an order expunging the second notice of lis pendens. Carmen then amended her notice of appeal to include the trial's court's order expunging the second notice.

Carmen asserts the trial court erred in canceling the notice and amended notice of lis pendens and in expunging the second lis pendens. We only address Carmen's complaint that the trial court erred in expunging the second notice of lis pendens because, if the trial court erred in expunging the second lis pendens, it remains in effect. Thus, any error related to trial court's order canceling the first and amended notices is moot.

A lis pendens may be filed during the pendency of an action involving title to real property, the establishment of an interest in real property, or an enforcement of an encumbrance against real property. TEX. PROP. CODE ANN. § 12.007 (West 2009). The purpose of a lis pendens is to put parties interested in a particular tract of land on notice as to the facts and issues

involved in a suit or action concerning that particular tract. *In re Jamail*, 156 S.W.3d 104, 108 (Tex. App.—Austin 2004, orig. proceeding.); *In re Collins*, 172 S.W.3d 287, 292–93 (Tex. App.—Fort Worth 2005, orig. proceeding); *Garza v. Pope*, 949 S.W.2d 7, 8 (Tex. App.—San Antonio 1997, no writ). A lis pendens is not an independent claim, *Collins v. Tex Mall, L.P.*, 297 S.W.3d 409, 419 (Tex. App.—Fort Worth 2009, no pet.), and has no existence separate and apart from the litigation of which it gives notice. *Taliaferro v. Smith*, 804 S.W.2d 548, 550 (Tex. App.—Houston [14th Dist.] 1991, no writ). Under Texas law, a lis pendens does not prevent a sale of the property; it merely places a purchaser on notice that a person other than the title holder claims an interest in the property. *Group Purchases, Inc. v. Lance Inv., Inc.*, 685 S.W.2d 729, 731 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). A lis pendens notice operates during the pendency of the lawsuit and terminates with the judgment, in the absence of appeal. *Berg v. Wilson*, 353 S.W.3d 166, 180 (Tex. App.—Texarkana 2011, pet. denied); *see also Hartel v. Dishman*, 135 Tex. 600, 145 S.W.2d 865, 869 (1940); *Collins*, 297 S.W.3d at 418.

Section 12.0071 of the Texas Property Code provides the statutory authority for expunging a lis pendens. TEX. PROP. CODE ANN. § 12.0071 (West Supp. 2011). Section 12.071 provides in part

> (a) A party to an action in connection with which a notice of lis pendens has been filed may:
>
>> (1) apply to the court to expunge the notice; and
>>
>> (2) file evidence, including declarations, with the motion to expunge the notice.
>
> (b) The court may:
>
>> (1) permit evidence on the motion to be received in the form of oral testimony; and

- 11 -

(2) make any orders the court considers just to provide for discovery by a party affected by the motion.

(c) The court shall order the notice of lis pendens expunged if the court determines that:

(1) the pleading on which the notice is based does not contain a real property claim;

(2) the claimant fails to establish by a preponderance of the evidence the probable validity of the real property claim; or

(3) the person who filed the notice for record did not serve a copy of the notice on each party entitled to a copy under Section 12.007(d).

(d) Notice of a motion to expunge under Subsection (a) must be served on each affected party on or before the 20th day before the date of the hearing on the motion.

TEX. PROP. CODE ANN. § 12.0071 (West Supp. 2011). The record does not reflect that any party to the underlying action filed a motion to expunge the second lis pendens, nor do the children argue one was filed. It appears from the record the trial court sua sponte, only four days after the second lis pendens was filed, ordered the second lis pendens expunged.

Section 12.0071 allows a party to file a motion requesting the trial court expunge a notice lis pendens, but the statute requires that the motion be served on each affected person on or before the 20th day before a hearing on the matter. No party filed a motion and Carmen was not provided twenty days' notice that the trial court was considering expunging the lis pendens. We hold the trial court erred in expunging the lis pendens sua sponte and without proper notice to each affected party.

**CONCLUSION**

Carmen's affidavits were not sham affidavits and were sufficient to raise a fact issues on each element of her claim that she and Francisco had an informal marriage. Accordingly, the

summary judgment is reversed and the cause is remanded to the trial court. Additionally, we hold the trial court erred in expunging Carmen's second notice of lis pendens.

Steven C. Hilbig, Justice