Opinion
of August 21, 2007, Withdrawn;  Affirmed in Part, Reversed and Remanded in Part, and Corrected Memorandum Opinion filed
August 28, 2007.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00652-CV

____________

 

EL SABOR DE MI TIERRA, INC. D/B/A
EL SABOR DE MEXICO, Appellant

 

V.

 

ATASCOCITA/BOONE JV, HOUSTON REAL
ESTATE GROUP, INC. AND SHERRY HARBER, Appellees

 



 

On Appeal from the 129th
District Court

Harris County, Texas

Trial Court Cause No. 2004-02484A

 



 

C O R R E C T E D   M E M O R A N D U M   O P I N I O N

This corrected memorandum opinion is being issued in place
of the opinion issued August 21, 2007, because the Trial Court Cause Number was
incorrect.








In this appeal, El Sabor de Mi Tierra, Inc. d/b/a El Sabor
de Mexico (AEl Sabor@) contends that
the trial court erred in granting summary judgment favoring Atascocita/Boone JV
(AAtascocita@), Houston Real
Estate Group, Inc. (AHREG@), and Sherry
Harber (collectively Aappellees@), in El Sabor=s lawsuit arising
out of a landlord-tenant relationship between El Sabor and Atascocita. 
Appellees additionally raise cross-points challenging the admissibility of
affidavits filed by El Sabor.  We affirm in part and reverse and remand in
part.

I.  Background

In June 2003, El Sabor executed a commercial lease
agreement with Atascocita for rental space in a shopping center.[1] 
El Sabor subsequently made modifications to the leased premises, including
plumbing and air conditioning work, and opened a Mexican restaurant.  The
restaurant opened in August 2003 and closed in August 2004.  About two months
into the lease term, representatives of El Sabor began to complain to appellees
of a sewer gas odor.[2] 
In its pleadings, El Sabor alleged that the odor was so severe on numerous
occasions that it had to close the restaurant.  El Sabor further contends that
appellees knew of the problem and failed to disclose it prior to execution of
the lease agreement.

Appellees filed three motions for summary judgment,
containing both traditional and no evidence grounds.  El Sabor filed multiple
responses and filed amended petitions alleging new causes of action. 
Ultimately, the trial court granted summary judgment on all of El Sabor=s claims.  On
appeal, El Sabor challenges only the grant of summary judgment on certain of
its causes of action, specifically:  negligence, nuisance, violations of the
Deceptive Trade Practices Act,[3]
breach of contract, and breach of the implied warranty of suitability.[4]








The lease agreement at issue contained three Aas is@ provisions, which
appellees stressed in support of their motions for summary judgment.[5] 
The first such clause appears on the ALease Summary@ page and states: 
ALessee accepts
premises >AS IS=.  Lessee will be responsible for any
build out and repairs to the Demised Premises.@  The second
appears in the ACovenants and Warranties@ section and
states as follows:

Lessee has inspected the Demised
Premises and accepts them in their existing condition, on an AS IS basis. 
Lessee hereby waives and relinquishes any right to assert, either as a claim or
a defense that Lessor is bound to perform or is liable for the non-performance
of any implied covenant or implied duty of Lessor not express[l]y set forth
herein.  Lessee waives any implied warranty of Lessor that the Demised Premises
are suitable for their intended commercial purposes.  Lessee agrees to perform
all of its Lease obligations (including, without limitation, the obligation to
pay rent), irrespective of any breach or an alleged breach by Lessor of any
such implied warranty.

The
third clause appears on AExhibit C,@ which was
attached to the lease.  This clause is identical to the one listed in the Lease
Summary and, indeed, appears to be what is summarized there.  The lease further
obligates El Sabor to keep Athe Demised Premises, and all property and
improvements situated therein in good repair, included without limitations all
plumbing, heating and electrical installations, air conditioning equipment,
hardware, doors and windows, interior painting and decorating.@  The lease
further provides that Atascocita:

shall make structural repairs to
any part of the exterior of the building of which the Demised Premises are a
part including the roof and building walls, and shall repair any interior
portion thereof resulting from a structural defect and shall repair or replace
any appurtenance thereby rendered unfit for use; provided, that the Lessor=s obligations
shall not extend to any of said conditions which may have created [sic] by the
negligence of Lessee . . . .

Although
the lease agreement is not explicit in defining the phrase ADemised Premises,@ it appears clear
from the agreement as a whole that the phrase refers to the 2,500 square feet
portion of the shopping center leased by El Sabor.








The summary judgment evidence also includes a number of
affidavits.  In her affidavit, Liza De Anda stated that she managed the El
Sabor restaurant during its operational year.  She said that on numerous
occasions during that year she noticed Anoxious, foul, and
ill smelling sewer gas,@ and the restaurant had to close several
times because of it.  She further averred that she made several complaints to ASherri Harbor
[sic],@ but the problem
was never corrected.  She said that the restaurant lost considerable business
because of the smell.

In his original affidavit, Howard Novick, the principle of
El Sabor, stated that during lease negotiations, ASherri Harbor
[sic] stated that the plumbing for the lease space worked fine and that the
space was suitable for a restaurant.@  He said that he
relied upon these representations in signing the lease, but after occupying the
space, the restaurant experienced numerous unresolved plumbing problems,
causing the restaurant to close on several occasions.  In a subsequent
affidavit, Novick stated that he never had the leased space inspected by Aanyone such as an
engineer, electrician or plumber.@  He said that he
relied on the representations of the property management Ato determine if
there were problems with the shopping center in general, or with the leased
space.@  More
specifically, he said that he asked Sherry Harber if there were any problems
that needed attention, and she responded:  AEverything is
working perfectly.@  He further said that he Awas not aware of
any problem that existed with the plumbing system before [he] signed the lease
and the landlord never indicated to [him] that there was any problem with the
plumbing system.@  He said that appellees never disclosed
to him that plumbers had been called to the property on numerous occasions or
that prior tenants had complained about plumbing or sewer odors.

Appellees presented affidavits from tenants of the shopping
center:  Carl Selbe, who formerly operated a floral shop at the center, and
Shiang Jui, who continued to operate (as of the time he signed the affidavit) a
Chinese restaurant at the center.  Both stated that they had never experienced
any plumbing related problems or foul odors at the center.








Additionally, there are two affidavits in the record from
Richard Vacante.  In the first, filed by El Sabor, Vacante states that he
operated a bakery in the shopping center and encountered numerous plumbing
problems, including sewer odors resulting in customer complaints and at least
two floods caused by sewer backups.  He further said that he complained to ASherri Harbor
[sic]@ on several
occasions, but the problem was never fixed.[6] 
In his second affidavit, filed by appellees, Vacante indicates a desire to Arecant and . . .
withdraw@ his entire
original affidavit.  He says that in actuality a drain in the office overflowed
twice causing an associated odor, but he did not suffer store-wide floods or Anumerous@ plumbing problems
as his prior affidavit suggested.  He said that he reported problems to Sherry
Harber only on those two occasions.

Appellees also provided excerpts from Novick=s deposition.  In
the excerpt, Novick states that he could recall meeting Harber on only one
occasion prior to signing the lease but that no substantive discussion occurred
during the brief encounter.  He then says that once he asked her whether
everything was Ain good working condition,@ and Harber said
that it was.  He could not recall, however, whether this conversation occurred
before or after he signed the lease.

Lastly, appellees provided detailed plumbing records for
the shopping center, covering approximately from December 1999 to August 2003. 
As appellees point out, the records contain only one express mention of a sewer
odor, in September 2003, when the smell was traced to an air conditioning unit
and not to a sewer line.  The records, however, detail at least sixteen
occasions on which plumbing lines at the shopping center had to be cleaned out
due to blockage, with ten of these occurring in the three years prior to the
signing of the lease agreement.  Additionally, on October 28, 2000, a plumber
was called out to investigate possible leaks from a water meter box and a sewer
connection after the local Municipal Utility District reported a possible sewer
leak.  Another service note mentions a leak at a bakery in the shopping
center.  A service visit on April 5, 2002, generated the following note:








Televised building sewer lines from
clean-out at SW corner of building.  Line runs east through entire shopping
center.  Found minor sags/build-up first 100ft.  Moderate to heavy sags and
build up [sic] at 145ft - 185ft - 225ft and bad low spot at 230-245ft.  Severe
grease buildup at 250ft.  6" line at this location but a 2" opening
may cause backup.  No breaks or cracks found.

A
different note from the same month suggests that there may have been a broken
line under the driveway.  On August 11, 2003, the drain lines were so clogged
that the plumber had to return to his office to refill his water jet machine
before continuing to clear the line.

II.  Standards of Review

We review a grant of summary judgment under a de novo
standard.  Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex.
2005).  When, as here, the trial court grants summary judgment without
specifying the grounds on which it bases its decision, we must affirm the
judgment if any of the grounds presented by the movant are meritorious.  FM
Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872‑73 (Tex.
2000).  When reviewing a grant of summary judgment, we take as true all
evidence favorable to the nonmovant and indulge every reasonable inference and
resolve any doubts in the nonmovant=s favor.  Joe
v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004).

In a traditional motion for summary judgment under Texas
Rule of Civil Procedure 166a(c), the movant has the burden of demonstrating
that there is no genuine issue of material fact and that it is entitled to
judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425
(Tex. 1997).  A traditional summary judgment for a defendant is proper only
when the defendant negates at least one element of each of the plaintiff=s theories of
recovery, or pleads and conclusively establishes each element of an affirmative
defense.  Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex.
1997).








In a no‑evidence motion summary judgment under Rule
166a(i), the movant represents that there is no evidence of one or more essential
elements of the claims for which the non‑movant bears the burden of proof
at trial.  Tex. R. Civ. P.
166a(i); Green v. Lowe=s Home Ctrs., Inc., 199 S.W.3d 514,
518 (Tex. App.CHouston [1st Dist.] 2006, pet. denied).  We must
sustain a no‑evidence summary judgment when (1) there is a complete
absence of evidence of a vital fact, (2) the court is barred by rules of law or
of evidence from giving weight to the only evidence offered to prove a vital
fact, (3) the evidence offered to prove a vital fact is no more than a mere
scintilla, or (4) the evidence conclusively establishes the opposite of the
vital fact.  Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711
(Tex. 1997).  Less than a scintilla of evidence exists when the evidence is so
weak as to do no more than create a mere surmise or suspicion of a fact.  King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003).

III.  Objections to Affidavits

In two cross-points, appellees challenge the admissibility
of certain affidavits filed by El Sabor.  We will discuss the cross-points
first because they may impact our substantive discussion of the summary
judgment evidence.  We review a trial court=s decision to
admit or exclude summary judgment evidence for an abuse of discretion.  Owens‑Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998).

A.  Richard Vacante=s Two Affidavits

In the first cross-point, appellees contend that the trial
court erred in overruling their objections to Richard Vacante=s original
affidavit.  Specifically, appellees assert both that the original affidavit
should have been disregarded in its entirety and that certain paragraphs of the
affidavit were inadmissible.








As mentioned above, two affidavits were submitted from
Vacante, who previously ran a bakery at the shopping center.  In the first
affidavit, Vacante stated that he encountered numerous plumbing problems,
including sewer odors causing customer complaints and at least two floods
caused by sewer backups.  He further said that he complained to ASherri Harbor
[sic]@ on several
occasions, but the problem was never fixed.  In the second affidavit, Vacante
indicated a desire to Arecant and . . . withdraw@ his original
affidavit because it was Aworded in an overly general and imprecise
manner that could be easily misconstrued.@  He said that he
had asked the person who presented him with the first affidavit to make changes
to it before he signed it, but the changes were not made.  He further said that
in actuality a drain in the office overflowed twice causing an associated odor,
but he did not suffer store-wide floods or Anumerous@ plumbing
problems.  He also said that he reported problems to Sherry Harber on only two
occasions.

Appellees initially argue that because of the Ahighly
questionable circumstances under which [the first affidavit] was obtained,@ it should be
disregarded in its entirety.  Appellees have provided little additional
argument on this contention and offered no citation to authority either in the
trial court or on appeal.  See Tex.
R. App. P. 38.1(h) (requiring that briefs contain argument for the
contentions made and appropriate citations to authority), 38.2(a)(1) (providing
that appellee briefs must generally follow the requirements of Rule 38.1). 
Nonetheless, it is clear that Vacante duly swore that both affidavits were Atrue and correct.@  The second
affidavit, in fact, is mostly an attempt to clarify (and not directly
contradict) statements made in the original affidavit.  Appellees provide no
reason why the statements in the first affidavit could not still be considered
in light of the clarifications in the second affidavit.  Accordingly, we do not
find that the trial court abused its discretion in declining to disregard
Vacante=s first affidavit
in its entirety.








Appellees additionally contend that the trial court erred
in denying their objections to paragraphs 4 and 5 of Vacante=s original
affidavit.  Paragraph 4 states in its entirety: AWhile I was
operating the bakery, I had numerous plumbing problems there.  Periodically,
throughout my tenancy, I smelled sewer odors, and customers complained to me
about the odor.  On at least 2 occasions, the sewer backed up and flooded my
bakery.@  In their brief,
appellees complain that this paragraph Acontains no
substance . . . is vague and nonspecific and provides nothing in the way of
relevant substantive information.@[7]  Again, appellees
have cited no authority in making their arguments.  See Tex. R. App. P. 38.1(h), 38.2(a)(1). 
Although the paragraph is not specific regarding time, a prior paragraph
provides the time frame for Vacante=s 18-month tenancy. 
Furthermore, although the phrase AI had numerous
plumbing problems@ is rather vague, the following sentence
explains that throughout his tenancy, Vacante smelled sewer odors and that the
sewer backed-up on at least two occasions.  Accordingly, we find that it was
within the trial court=s discretion to disagree with appellees= characterization
of paragraph 4.

Paragraph 5 states in full:  AOn several
occasions I made complaints to Sherri Harbor [sic] about the sewer odor and
plumbing problems, but they were never cured.@  As to this
paragraph, appellees argue that it Acontains general,
nonspecific and nonsubstantive information@ and that Vacante
has no Aknowledge,
ability, or foundation to make the assertions in paragraph five.@  Again, appellees
offer little supporting argument and no citation to authority.  Regarding the
first assertion in the paragraph that he had made Aseveral@ complaints to
Harber, he clarifies this in his second affidavit by saying it was only two
complaints.  The second assertionCthat the problems
were never correctedCappears to be based on his statement in
paragraph 4 that the problems occurred Athroughout [his]
tenancy@ and not on any
particular knowledge of plumbing as appellees suggest.  Accordingly, we find
that it was within the trial court=s discretion to
disagree with appellees= characterization of paragraph 5.  We
overrule appellees= first cross-point.

B.  Sham Affidavits








In their second cross-point, appellees contend that the
affidavits of Howard Novick and Liza De Anda are Aconjured shams
created solely in a failed attempt to create a fact issue to preclude summary
judgment,@ citing Farroux v. Denny=s Restaurants,
Inc.,
962 S.W.2d 108, 111 (Tex. App.CHouston [1st Dist.] 1997, no pet.).  In Farroux,
the plaintiff filed an affidavit in response to the defendant=s motion for
summary judgment making four specific factual assertions that contradicted
testimony he had previously given in his deposition.  Id.  The First
Court of Appeals held that the affidavit was a Asham,@ unworthy of
consideration, stating: AA party cannot file an affidavit to
contradict his own deposition testimony without any explanation for the change
in the testimony, for the purpose of creating a fact issue to avoid summary
judgment.@  Id. (citing Bank of Ill. v. Allied Signal
Safety Restraint Sys., 75 F.3d 1162, 1168‑69 (7th Cir. 1996)). 
Several other courts of appeals have adopted and applied the Farroux
sham affidavit rule, while others have expressly rejected it.  Compare
Trostle v. Trostle, 77 S.W.3d 908, 915 (Tex. App.CAmarillo 2002, no
pet.) (adopting sham affidavit rule); Burkett v. Welborn, 42 S.W.3d 282,
286 (Tex. App.CTexarkana 2001, no pet.) (same); and Eslon
Thermoplastics v. Dynamic Sys., Inc., 49 S.W.3d 891, 901 (Tex. App.CAustin 2001, no
pet.) (same), with Pierce v. Washington Mut. Bank, 226 S.W.3d 711,
717-18 (Tex. App.CTyler 2007, pet. filed) (rejecting rule); Davis
v. City of Grapevine, 188 S.W.3d 748, 755-56  (Tex. App.CFort Worth 2006,
pet. denied) (same); Larson v. Family Violence & Sexual Assault
Prevention Ctr. of S. Tex., 64 S.W.3d 506, 513 (Tex. App.CCorpus Christi
2001, pet. denied) (same); and Thompson v. City of Corsicana Housing Auth.,
57 S.W.3d 547, 557 (Tex. App.CWaco 2001, no pet.) (same).[8]








The Texas Supreme Court has yet to specifically address the
sham affidavit rule but has previously held that Aa deposition does
not have controlling effect over an affidavit in determining whether a motion
for summary judgment should be granted.  Thus, if conflicting inferences may be
drawn from a deposition and from an affidavit filed by the same party in
opposition to a motion for summary judgment, a fact issue is presented.@  Randall v.
Dallas Power & Light Co., 752 S.W.2d 4, 5 (Tex. 1988) (citing Gaines
v. Hamman, 163 Tex. 618, 358 S.W.2d 557, 562 (1962)).  In Cantu v.
Peacher, the San Antonio Court of Appeals attempted to explain the Farroux
and Randall cases as falling along a continuum based on the level of
contradiction between the affidavit and deposition statements rather than being
in direct conflict with one another.  53 S.W.3d 5, 9-11 (Tex. App.CSan Antonio 2001,
pet. denied) (AMost differences between a witness=s affidavit and
deposition are more a matter of degree and details than direct contradiction.@).  We hold that
regardless of which reasoning is appliedCFarroux, Randall,
or CantuCany conflict between Novick=s and De Anda=s affidavit
statements and deposition testimony does not rise to the level that renders the
affidavits mere shams.

1.  Novick=s Affidavit

Appellees compare Novick=s deposition
testimony that he had only one nonsubstantive meeting with Sherry Harber before
the lease was signed with his affidavit statements that Harber told him before
he signed the lease that the plumbing worked fine and the space was suitable
for a restaurant.  Appellees quote Novick=s deposition
selectively with misleading interpretation.  Immediately after stating that no
pre-lease substantive conversations occurred, Novick made this caveat or
clarification in an exchange with opposing counsel:

A.      But I have to say thisCand I=m not sure if the lease was signed or not . . . but
I asked Ms. Harber, AIs everything in good working
condition,@ because I was concerned about the AAs Is@; and she said it was.

Q.      Your testimony is that you had this
conversation, but you cannot recall if it was before or after you signed the
lease?

A.      That=s correct, because
it was in the premises . . . .[9]

It therefore appears that in his deposition testimony,
Novick in fact allowed for the possibility of a substantive pre-lease
discussion with Harber regarding the property.  Thus, his affidavits can be
seen more as clarifications of his deposition testimony (taken as a whole)
rather than direct refutations of it as occurred in Farroux.

2.  De Anda=s Affidavit








Appellees argue that De Anda=s affidavit
statement that the odor problem at the property was never corrected directly
conflicts with her deposition testimony that the last time she noticed a
particularly bad sewer odor at the property was some five months before the
restaurant closed.  However, the mere fact that De Anda no longer smelled
particularly bad odors after a particular point does not directly contradict
her statement regarding lack of repairs.[10] 
Saying that repairs were indeed made or that she saw repairs being made would
be a direct contradiction to her affidavit statement, but simply not noticing
the smell for a time is not.  Because appellees fail to identify any direct
conflicts between the affidavit statements and deposition testimony of Novick
and De Anda, we overrule appellees= second
cross-point.

IV.  Summary Judgment Analysis

We will begin by addressing El Sabor=s claims against
Sherry Harber.  Next we address appellees= traditional and
no-evidence summary judgment arguments in regards to El Sabor=s negligence,
nuisance, DTPA, and breach of contract theories of recovery.  We separately
consider appellees= contention that the Aas is@ clauses in the
lease agreement defeat, as a matter of law, the causation element of each of El
Sabor=s causes of action
as well as El Sabor=s implied warranty of suitability cause of
action.

A.  Sherry Harber








In their Second Motion for Summary Judgment, which the
trial court granted in full, appellees asserted as grounds for judgment on
behalf of Sherry Harber that there was no evidence that any of her actions fell
outside the course and scope of her employment.  Therefore, appellees insisted,
each of El Sabor=s theories of recovery against Harber (in
her individual capacity) failed.  In its appellate brief, El Sabor does not
address this ground for summary judgment favoring Harber in regards to its
negligence, nuisance, breach of contract, and breach of implied warranty
claims.[11] 
Consequently, it has abandoned these claims against her.  See Cuyler v.
Minns, 60 S.W.3d 209, 216 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied).  We therefore overrule points of error one and two
as well as four through eight to the extent that El Sabor asserts that the
trial court erred in granting summary judgment favoring Harber on these claims.

Under point of error four, concerning its DTPA allegations
against Harber, El Sabor argues that an individual can be found liable under
the act for making false misrepresentations regardless of whether the
statements were made in the course and scope of employment.  This position is
supported by the Texas Supreme Court=s opinion in Miller
v. Keyser, 90 S.W.3d 712, 715-18 (Tex. 2002).[12] 
Consequently, the trial court erred to the extent it granted summary judgment
favoring Harber on El Sabor=s DTPA claim based on lack of any evidence
that Harber=s actions fell outside the course and scope of her
employment.  We sustain point of error four to this extent.

B.  Negligence[13]








In its first point of error, El Sabor contends that the
trial court erred in granting summary judgment against its negligence cause of
action.  In their motion for summary judgment, in regard to El Sabor=s negligent failure
to disclose claim, appellees argued that they conclusively established the
absence of any duty to disclose or any breach thereof.[14] 
More specifically, appellees asserted that the summary judgment evidence
conclusively established the absence of any sewer gas odor pre-existing the
execution of the lease.  Therefore, because the presence of sewer gas odor was
not foreseeable, appellees owed El Sabor no duty to disclose.  Appellees cite
to three pieces of evidence in support of this contention: the plumbing
records, Selbe=s affidavit, and Chang=s affidavit. 
Although the plumbing records do not specifically mention any sewer odor prior
to the start of the lease, they are replete with pre-lease notations regarding
plumbing problems at the property, including sewer-related problems.  These
problems could have generated a sewer odor that was not noted in the job
descriptions.  Thus, the plumbing records do not conclusively prove the absence
of such an odor.  Selbe=s statements that during his eight to nine
month tenancy at the property he did not notice any type of sewer odor does not
conclusively demonstrate that there was no sewer odor prior to El Sabor=s tenancy eight
months later.  Lastly, Chang=s testimony that he had never experienced
any sewer odor as a tenant in another space at the shopping center does not
establish that there was no prior odor at the space leased by El Sabor. 
Accordingly, we find that appellees did not conclusively prove a lack of duty
or breach thereof.








In their reply to El Sabor=s response to the
motion for summary judgment, appellees contended that El Sabor could produce Ano evidence of any
ongoing sewer gas issue@ prior to execution of the lease
agreement.  To the contrary, Richard Vacante stated in his original affidavit
that he smelled sewer odors throughout his tenancy, which was prior to El Sabor=s tenancy, and
while his second affidavit explained that he really only noticed a sewer odor
on two occasions, even this is some evidence of an odor problem at the
property.  Additionally, as stated, the plumbing records demonstrate a history
of on-going plumbing and sewer-related problems at the property that suggests
the odor problem may have been ongoing.  Lastly, in their affidavits, Novick
and De Anda described sewer odors and plumbing problems occurring throughout El
Sabor=s tenancy.  Taken
together with the other evidence, these affidavits further suggest that an odor
problem may have been ongoing at the property prior to the tenancy. 
Accordingly, we find that the trial court erred in granting summary judgment
against El Sabor=s negligence claims based on appellee=s alleged failures
to disclose and to make plumbing repairs.  We sustain point of error one in
regards to these claims against Atascocita and HREG.

C.  Nuisance

In its second point of error, El Sabor contends that the
trial court erred in granting summary judgment against its nuisance cause of
action.  In its petition, El Sabor alleged that almost immediately upon opening
the restaurant A[El Sabor] began experiencing severe
plumbing problems and certain noxious, foul, and ill smelling sewer gas odors
emanating from the property [and] continuing as of the present date so as to
render [El Sabor=s] premises unhealthy, dangerous and unfit
for the restaurant business.@  El Sabor further alleged that appellees
knew or should have known that these problems would cause health risks,
personal discomfort, and substantial annoyance to persons of ordinary
sensibilities.  Therefore, it concluded appellees intentionally or negligently
interfered with El Sabor=s use and enjoyment of the premises.








In their motion for summary judgment, appellees argued that
the evidence established as a matter of law that El Sabor could not maintain a
nuisance cause of action.[15] 
In support of this argument, they pointed to (1) section 5.1 of the lease
agreement, (2) Selbe=s affidavit, (3) Chang=s affidavit, and
(4) the plumbing records.  According to appellees, because section 5.1 makes El
Sabor responsible for plumbing repairs in the demised premises, appellees
cannot be liable for nuisances emanating from the plumbing system.  However,
while section 5.1 assigned El Sabor responsibility for plumbing repairs in the
leased space, El Sabor=s nuisance claims do not appear limited to
the lease space but appear directed at the shopping center property as a
whole.  Indeed, the plumbing records suggest the existence of plumbing problems
(reoccurring blockages, leaks, line sags, a two-inch opening on a six-inch
line, and a possible broken line) in the common lines of the shopping center. 
Section 5.1 does not obligate El Sabor to repair the common lines in the
center, only the plumbing within its leased space.  Appellees assert that the
affidavits and the plumbing records demonstrate the absence of plumbing and
odor problems at the property.  For the same reasons as expressed above, these
documents do not in fact prove the absence of such problems at the property.

In their motion, appellees also asserted that there is no
evidence to support the nuisance claim Abecause there is
no evidence [appellees] caused or created the supposed nuisance.@  However, El
Sabor did not allege that appellees Acaused or created@ the nuisance;
thus, this argument cannot be a valid ground for summary judgment against El
Sabor=s claims. 
Accordingly, we find that the trial court erred in rendering summary judgment
against El Sabor=s nuisance cause of action.  We sustain
point of error two in regards to the nuisance cause of action against
Atascocita and HREG.

D.  DTPA








In its third point of error, El Sabor contends that the
trial court erred in granting summary judgment against its cause of action for
DTPA violations.  In regard to El Sabor=s DTPA claims,
which appellees characterized as alleging a failure Ato disclose a
material defect in the form of a sewer gas odor,@ appellees
asserted in their motion that A[t]he undisputed facts establish . . . the
total absence of actual knowledge on the part of this Defendant of any
pre-existing sewer gas odor.@[16]  In support of
this assertion, appellees again point to Selbe=s affidavit, Chang=s affidavit, and
the plumbing records.[17] 
For the same reasons discussed above that these pieces of evidence do not
conclusively prove the absence of an odor problem at the property, they also do
not prove the absence of actual knowledge.  The plumbing records are replete
with pre-lease notations regarding plumbing (including sewer-related) problems
at the property, Selbe=s statements that he did not notice any
sewer odor does not conclusively demonstrate that there was no sewer odor (or
that appellees were unaware of such an odor) prior to El Sabor=s tenancy eight
months later, and Chang=s testimony that he had never experienced
any sewer odor in a different part of the shopping center does not establish
that there was no prior odor at the space leased by El Sabor.

Appellees additionally asserted that El Sabor could provide
no evidence that there was a pre-existing odor problem or that appelles had
knowledge thereof.  However, in addition to the plumbing records (of which
appellees certainly would have had knowledge), Vacante stated in both of his
affidavits that he experienced a sewer odor at the property and complained to
appellees.  Furthermore, De Anda and Novick described sewer odors and plumbing
problems in their affidavits.  Taken together with the other evidence, these
affidavits further suggest that an odor problem may have been ongoing at the
property prior to El Sabor=s tenancy and that appellees would have
had knowledge of it.  Accordingly, we find that the trial court erred in
granting summary judgment against El Sabor=s DTPA claims
related to failure to disclose plumbing repairs and associated odors.  We
sustain point of error three in regards to these DTPA claims against Atascocita
and HREG.








E.  Breach of Contract

In point of error four, El Sabor contends that the trial
court erred in granting summary judgment against its breach of contract
claims.  El Sabor made a number of breach of contract allegations in its
petition, stating that appellees:

breached the Lease by [their]
failure to repair the chronic plumbing problems of the Property, unreasonably
withholding permission to alter the premises and use the common areas, failure
to allow Plaintiff AQuiet Enjoyment@ of the premises,
and failure to prepare annual budgets and expense reports for the additional
charges.

In
their motion for summary judgment, appellees attacked the allegation that they
failed to make required repairs by asserting that:  (1) section 5.1 of the
lease agreement made El Sabor, and not appellees, Aresponsible for
maintaining the plumbing system at the subject premises@; and (2) the
plumbing records Aconclusively negate any claim of a failure
to effect repairs.@  Regarding the first argument, section
5.1 made El Sabor responsible for plumbing repairs in the space that it leased;
however, the plumbing records strongly suggest the existence of plumbing
problems (reoccurring blockages, leaks, line sags, a two inch opening on a six
inch line, and a possible broken line) in the common lines of the shopping
center.  Section 5.1 does not obligate El Sabor to repair the common lines in
the center, only the plumbing within its leased space.  Appellees=s second argumentCthat the plumbing
records conclusively negate a claim of failure to repairCis also
incorrect.  The records reflect repetitive clearing of clogged lines, not
repairs to the system.  There are a couple of notations regarding repairing
waterlines in late 1999 and early 2002, but there is also a notation in late
2000 that the customer (presumably appellees) did not want the plumber to repair
a leak.  The records do not conclusively establish that all necessary repairs
were made.  Accordingly, the trial court erred in granting summary judgment
against El Sabor=s breach of contract claim for failure to
make plumbing repairs.  We sustain point of error four in regards to this
breach of contract claim against Atascocita and HREG.








Regarding El Sabor=s remaining breach
of contract claims, appellees alleged in their motion, among other things, that
there was no evidence that any such breaches had caused El Sabor any damages. 
In its response, El Sabor failed to support these claims with any evidence of
damages.  Accordingly, the trial court properly granted summary judgment
against these claims.  See Tex.
R. Civ. P. 166a(i).  Thus, we overrule point of error four in regards to
these claims.

F.  The AAs Is@ Clauses,
Causation, and Implied Warranty

In points of error five through eight, El Sabor contends
that the trial court erred in granting summary judgment against its cause of
action for breach of the implied warranty of suitability.  In points of error
six and eight, El Sabor contends that the trial court erred if it granted
summary judgment on each of its causes of action based on application of the Aas is@ clauses in the
lease agreement.

In two of their motions for summary judgment, appellees
argued that the Aas is@ clauses in the
lease agreement defeat the causation elements in El Sabor=s DTPA,
negligence, nuisance, and breach of contract causes of action.  They further
contended that because the Aas is@ clause in section
13.17 of the lease contains an express waiver of the implied warranty of
suitability, this clause also defeats El Sabor=s breach of
implied warranty claims.  In Prudential Insurance Co. of America v.
Jefferson Associates, Ltd., the Texas Supreme Court held that an Aas is@ clause in a
contract for the sale of land can defeat the causation elements of tort claims
based on the physical condition of the property.  896 S.W.2d 156, 161 (Tex.
1995).  In Gym-N-I Playgrounds, Inc. v. Snider, the court extended the Prudential
holding to cases involving lease agreements.  220 S.W.3d 905, 914 (Tex.
2007).  The court further held that the implied warranty of suitability in
commercial lease agreements could be waived by an express clause in the lease. 
Id. at 910-14.








In its response to the motion for summary judgment, El
Sabor argued that (1) the Aas is@ clauses in the
lease agreement do not apply to problems existing outside of the ADemised Premises,@ and (2) El Sabor
was fraudulently induced into the agreement.  We begin by examining the first
argument.  Finding that the Aas is@ clauses do not
defeat the causation elements of El Sabor=s causes of
action, even if the clauses are enforceable under Prudential, we need
not address the fraudulent inducement argument.

To reiterate:  appellees argue that El Sabor=s acceptance of
the premises on an as-is basis defeats the causation element of any cause of
action based on the condition of the property and expressly waives the implied
warranty of suitability.  Thus, according to appellees, summary judgment was
proper against El Sabor=s claims based on plumbing problems and
associated odors.  El Sabor argues that even if enforceable, the Aas-is@ provisions do not
contemplate problems outside of the ADemised Premises.@  Thus, according
to El Sabor, the clauses would not apply to common plumbing line issues, and
summary judgment was therefore not proper.








We begin by looking at the contract language itself.  Two
of the three Aas is@ clauses simply state that ALessee accepts
premises >AS IS.=  Lessee will be responsible for any build
out and repairs to the Demised Premises.@  APremises@ and ADemised Premises@ are used
interchangeably in the agreement.[18] 
The third, and most fully developed clause, provides in part that:  ALessee has
inspected the Demised Premises and accepts them in their existing condition, on
an AS IS basis. . . .  Lessee waives any implied warranty of Lessor that the
Demised Premises are suitable for their intended commercial purposes.@  Although not
defined in detail, it is clear from the agreement as a whole that ADemised Premises@ (and therefore APremises@) refers to the
actual retail space leased by El Sabor and not to the whole shopping center
property.  For example, the leased premises are described as being 2,500 square
feet in area in the lease agreement, whereas the shopping center as a whole is
described as encompassing 47,980 square feet.  Additionally, section 1.2 of the
lease suggests that El Sabor was leasing only the interior walls and the space
between the walls and not the physical structure itself.[19] 
This interpretation is bolstered by section 5.2, which describes the ADemised Premises@ as a part of a
building.  Section 5.1 gives the lessor (Atascocita) the right to demand that
the lessee (El Sabor) repair plumbing installations in the Demised Premises. 
Lastly, the right to use the shopping center=s common plumbing
lines is clearly implied in the lease, particularly since there are references
to use of utilities, common areas and facilities, sanitary control, and Aappurtenances.@  Control and
responsibility for all common areas and facilities was retained by Atascocita.

Based on this analysis of the language in the agreement, we
conclude that the Aas is@ provisions waive
only those claims
against appellees that were based on problems occurring in the ADemised Premises.@  Because, as discussed in detail
above, El Sabor=s claims relate to alleged plumbing problems and associated
odors originating outside the ADemised Premises,@ they are not defeated by the Aas-is@ clauses.[20]  Accordingly, we
find that the trial court erred to the extent it granted summary judgment on
any of El Sabor=s claims based on the Aas is@ clauses in the
lease agreement.








Lastly, regarding the implied warranty theory of recovery,
appellees asserted in their motion for summary judgment that (1) the evidence
conclusively established that no latent defect existed at the property, and (2)
there is no evidence of a latent defect at the property.  As we have discussed
above, the evidence does not conclusively establish the absence of plumbing and
odor problems at the property, and in fact, there is more than a scintilla of
evidence that such problems existed.  Accordingly, the trial court erred in
granting summary judgment against El Sabor=s implied warranty
claims.  We sustain points of error five through eight in regards to the claims
against Atascocita and HREG.

IV.  Conclusion

The trial court erred in granting summary judgment favoring
Atascocita and HREG on El Sabor=s (1) negligence claims alleging failure
to repair and failure to disclose, (2) nuisance claims, (3) DTPA claims
alleging failure to disclose, (4) breach of contract claims for failure to make
plumbing repairs, and (5) breach of implied warranty claims.  The trial court
further erred in granting summary judgment favoring Harber on El Sabor=s DTPA claims. 
Accordingly, we reverse and remand these claims to the trial court for further
proceedings.  The trial court properly granted summary judgment regarding El
Sabor=s remaining causes
of action raised in its petition, including additional claims against Harber as
well as additional claims of negligence, DTPA violations, and breaches of
contract.  Accordingly, we affirm that portion of the judgment.

We affirm the trial court=s judgment in part
and reverse and remand the trial court=s judgment in part
for further proceedings in accordance with this opinion.

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

Judgment rendered
and Corrected Memorandum Opinion filed August 28, 2007.

Panel consists of
Chief Justice Hedges and Justices Fowler and Edelman.









[1]  Although it is not entirely clear from the record,
El Sabor contends that HREG was the property manager for the shopping center,
and Harber was the president of HREG.





[2]  This statement regarding complaints is made in the
pleadings of both El Sabor and appellees.





[3]  Tex. Bus.
& Com. Code Ann. '' 17.41‑.63
(Vernon 2002 & Supp. 2006).





[4]  Among the claims abandoned by El Sabor are slander,
fraud, and business disparagement.





[5]  The specific arguments made by appellees in support
of its motions and made by El Sabor in response are detailed below in the
analysis portion of the opinion.





[6]  The trial court sustained appellees objection to
paragraph 6 of Vacante=s original affidavit, and El Sabor does not challenge
this ruling on appeal.  Consequently, we do not discuss or consider the
statements in paragraph 6 in our analysis.





[7]  It should be noted that appellees did not object on
relevancy grounds in the trial court.  See Wohlfahrt v. Holloway, 172
S.W.3d 630, 639‑40 (Tex. App.CHouston
[14th Dist.] 2005, pet. denied) (holding that to have preserved error, a party=s argument on appeal must comport with its argument in
the trial court).





[8]  Except once in dicta, the Fourteenth Court of
Appeals has apparently not taken a side on the issue in a published opinion.  See
Blan v. Ali, 7 S.W.3d 741, 747 n.3 (Tex. App.CHouston [14th Dist.] 1999, no pet.) (AWhile we agree that [Farroux] precludes the trial court from
considering an affidavit that contradicts deposition testimony without an
explanation for the change in testimony, the supplemental affidavit does not
contradict Dr. Reisbord=s deposition testimony.@) (emphasis in original).





[9]  Unfortunately, because at this point the deposition
excerpt in the record skips several pages, it is unclear what else, if
anything, Novick might have had to say about this exchange with Harber.





[10]  In her deposition, De Anda in fact indicates that
she did notice the smell a couple more times, only not as strong as it had been
before.





[11]  It is not entirely clear from El Sabor=s live petition whether it intended to raise breach of
contract and breach of implied warranty claims against Harber.





[12]  In Miller, a defendant, sued in his individual capacity under
the DTPA, argued that a corporate agent cannot be held personally liable for
company misrepresentations.  90 S.W.2d at 715.  After a jury trial, the trial
court entered judgment against the defendant.  Id.  The First Court of
Appeals reversed, holding that an agent acting within the scope of his
employment could not be held liable under the DTPA.  Id.  The supreme
court, in turn, reversed the court of appeals, explaining that (1) the DTPA
permits suit against Aany person@ in violation of the act, (2) the
DTPA is to be construed liberally to protect consumers, and (3) based on the plain language of the statute, the
defendant was liable for his own conduct.  Id. at 715-16.





[13]  In its pleadings, El Sabor alleged that appellees
were negligent in a variety of ways, including failing to maintain the property
in a safe condition, failing to warn of defects, failing to make repairs,
failing to properly operate the property, and failing to disclose material
facts.  In their motion for summary judgment, appellees addressed the failure
to disclose and the possibility of negligent misrepresentations (the latter of
which was not raised in El Sabor=s pleadings),
but did not address any of the other claims of negligence.  In their appellate
brief, appellees state that in support of their motion, they Aestablished the absence of any duty to disclose/warn
or repair/maintain, as well as the lack of any breach of any supposed duties.@  In its appellate brief, El Sabor speaks generally
about the existence of a duty and the breach of that duty, but it also
specifically asserts a failure to disclose.  Clearly, a trial court cannot
grant summary judgment against claims that are not attacked in the motion for
summary judgment.  See Stiles v. Resolution Trust Corp., 867 S.W.2d 24,
26 (Tex. 1993) (stating that Rule 166a Aunequivocally
restrict[s] the trial court=s ruling to
issues raised in the motion, response, and any subsequent replies@).  On appeal, we will limit our discussion to the
summary judgment issues actually preserved in the trial court and raised in
this appeal.





[14]  A negligence cause of action requires proof of duty,
breach of duty, causation, and damages.  Doe v. Boys Clubs of Greater
Dallas, Inc., 907 S.W.2d 472, 477 (Tex. 1995).





[15]  In their appellate brief section on nuisance,
appellees again make arguments that do not appear in their trial court motion,
including (but not limited to) arguments that there was no evidence of appellees= allowing a particular condition to exist and that
there was no evidence of substantial interference with El Sabor=s use and enjoyment of the property because no
financial information or reports was provided.  As explained above, these
arguments cannot support the summary judgment, and we do not consider them on
appeal.  See Tex. R. Civ. P. 166a;
Stiles, 867 S.W.2d at 26.





[16]  El Sabor=s
pleadings actually appear to make additional DTPA claims, but on appeal, El
Sabor mentions only the failure to disclose the plumbing problems and
associated odors.  Appellees= brief makes
several arguments not made in their motion (including the assertion that there
was no plumbing defect at the property as opposed to the slightly different
assertion in the motion that there was no sewer odor problem at the propertyCa somewhat subtle distinction but a distinction
nonetheless).  See Tex. R. Civ.
P. 166a; Stiles, 867 S.W.2d at 26.





[17]  It is interesting to note that appellees did not
point to any statement by Harber or any other representative of any of the
appellees denying knowledge of the odor problem.





[18]  Indeed, the ADescription@ section of the lease states that:  ALessor hereby leases the premises to Lessee, and
Lessee leases and accepts, subject to the terms and conditions of this lease,
the premises referred to as the Demised Premises . . . .@





[19]  In his affidavit, Novick stated that he understood
the term Ademised premises@ to
mean Athe actual area of the restaurant, that is, from one
wall to the other and from the ceiling to the floor.@





[20]  In Prudential and Gym-N-I, the supreme
court emphasized that when a party agrees to accept property on an as-is basis,
the party is relying in large part on his or her own ability to inspect the
property.  See Gym-N-I, 220 S.W.3d at 914; Prudential, 896 S.W.2d
at 161.  It is difficult to imagine in the present case how El Sabor could have
feasibly inspected the common lines of the shopping center to detect a plumbing
problem prior to signing the lease.  This fact further supports the conclusion
that El Sabor did not agree to take the common plumbing lines on an Aas-is@ basis.  It is
equally unlikely that in agreeing to effect necessary repairs to the ADemised Premises@
and Aplumbing installations@ that El Sabor agreed to be responsible for repairing the common
plumbing lines at the shopping center.